ATLANTIC & GULF FERTILIZER COMPANY, a Florida Corpora-
tion, *Plaintiff in Error*, v. NATHAN MAYO and W. J.
LYLES, Co-partners Doing Business Under the Firm Name
and Style of Mayo-Lyles Store, *Defendants in Error.*

· Division B.

Opinion filed January 11, 1929.

*Crawford & May* for Plaintiff in Error;

*W. E. Smith* for Defendant in Error.

BUFORD, J.—The declaration in this case was as follows: "Nathan Mayo and W. J. Lyles, co-partners doing business as Mayo-Lyles Store, by their attorney W. E. Smith, sue the Atlantic & Gulf Fertilizer Company, a corporation organized and existing under the laws of the State of Florida, the defendant;

"For that, WHEREAS, on and prior to the 3rd day of September, 1926, and ever since that date, the defendant has been engaged in the business of manufacturing and sell-

ing commercial fertilizer in the State of Florida, and that on, to-wit: the 3rd day of September, 1926, in the County of Lake, State of Florida, the plaintiffs purchased 8100 pounds of commercial fertilizer from the defendant for their own use, at the price of $190.60, which amount of $190.60 the plaintiffs then and there paid to the defendant; that the fertilizer purchased by the plaintiffs from the defendant consisted of two lots or brands, that is to say, the plaintiffs purchased from the defendant 4000 pounds of commercial fertilizer called 'A & G Brand, No. 30 Fla. Old Timer', and 4110 pounds of brand called 'Special Mixture'.

"That it was the duty of the defendant, upon selling or offering said commercial fertilizer or fertilizer material for sale, to have securely attached a tag on which should be plainly and legibly printed the name or brand of the commercial fertilizer or fertilizer material; the name and address of the manufacturer or jobber; the net contents of the package in pounds; the chemical analysis stating the minimum percentage of available ammonia, and materials from which derived, insoluable ammonia, available phosphoric acid, and materials from which derived; insoluable phosphoric acid, water soluable potash and materials from which derived, and total available plant food; the maximum percentage of chlorine and moisture; and a statement of all the materials from which the commercial fertilizer or fertilizer material is made.

That on, to-wit: the 13th day of September, 1926, the defendant delivered to the plaintiffs the two lots of fertilizer materials as aforesaid in Lake County, Florida, and to each package of the brand aforesaid called 'A & G Brand, No. 30 Fla. Old Timer'', was attached a tag upon which the following representations, statements, guaranty and analysis was given and made:

4

|                                    | Guaranteed Per Cent. |      |
| ---------------------------------- | -------------------- | ---- |
| Available Ammonia (NH3)            | 3.65                 |      |
| Insoluable Ammonia (NH3)           | 0.10                 |      |
| Total Ammonia (NH3)                |                      | 3.75 |
| Available Phosphoric Acid (P205)   | 10.00                |      |
| Insoluable Phosphoric Acid (P205)  | 2.50                 |      |
| Potash (K20)                       | 6.25                 |      |
| Total Available Plant Food         | 19.90                |      |
| Moisture                           | 10.00                |      |
| Chlorine                           | ....                 |      |

"And to each package of the brand called 'Special Mixture' was attached a tag upon which the following representations, statements, guaranty and analysis was given and made;

|                                    | Guaranteed Per Cent. |      |
| ---------------------------------- | -------------------- | ---- |
| Available Ammonia ((NH3)           | 3.45                 |      |
| Insoluable Ammonia (NH3)           | 0.20                 |      |
| Total Ammonia (NH3)                |                      | 3.65 |
| Available Phosphoric Acid (P205)   | 9.74                 |      |
| Insoluable Phosphoric Acid (P205)  | 4.00                 |      |
| Potash (K20)                       | 7.30                 |      |
| Total Available Plant Food         | 20.49                |      |
| Moisture                           | 10.00                |      |
| Chlorine                           | ....                 |      |

"That the plaintiffs are now and were at the time of the purchase of said fertilizer, citizens of the State of Florida; that immediately after the receipt of the two brands of fertilizer aforesaid from the defendant, to-wit: on the 13th day of September, 1926, an authorized inspector of fertilizer of the State of Florida drew a sample thereof from the lot or brand of said fertilizer called 'A & G Brand No. 30 Fla.

Old Timer', as provided by law, and the rules and regulations made by the Commissioner of Agriculture, which sample was, by him, submitted to the Commissioner of Agriculture for analysis; and that on, to-wit, the 13th day of September, A. D. 1926, an authorized inspector of fertilizer of the State of Florida drew a sample thereof from the brand called 'Special Mixture', as provided by law, and the rules and regulations made by the Commissioner of· Agriculture, which sample was by him submitted to the Commissioner of Agriculture for analysis.

"And the Commissioner of Agriculture did thereupon require the State Chemist to analyze the said sample packages as drawn from both lots or brands of said fertilizer, and the State Chemist did analyze the same and certified his analysis thereof according to law, a copy of the certificate of analysis made by the State Chemist of both lots or brands of said fertilizer is hereto attached, marked Exhibits 'A' and 'B' and made a part of this declaration, and the plaintiffs discovered from such analysis and aver it to be true, that each of said lots of fertilizer was, at the time of delivery, deficient, and adulterated more than two-tenths of one per cent. in one or more of the constituent elements of available plant food, shown by the tag attached to said fertilizer, as set forth in said certificates hereto attached as Exhibits 'A' and 'B', and that they were thereby defrauded.

"Wherefore, these plaintiffs aver that they have been defrauded, by reason of the said deficiencies of said constituent element of available plant food as aforesaid, and that defendant is indebted to them in double the amount paid to it by the plaintiffs on account of said two lots of fertilizer, to-wit, in the sum of Three Hundred Eighty-one and 20/100 Dollars ($381.20) with interest at the rate of 8% per annum from the 1st day of October, 1926.

"Wherefore, plaintiffs sue the defendant, and claim damages in the sum of $1,000.00."

The declaration was demurred to on three grounds, as follows:

1. No facts that are alleged in and by said declaration which show or tend to show that the plaintiffs were defrauded by the defendant.

2. The bare allegation that the plaintiffs were defrauded is a conclusion.

3. It is not alleged that the defendant knew of any deficiency in any one or more of the constituent elements of available plant food in the fertilizer described in the declaration.

The demurrer came on for hearing and was overruled. Thereupon, three pleas were filed, as follows:

1. That the fertilizer furnished to the plaintiffs was of greater value and greater efficiency than fertilizer of the proportionate constituent elements in accordance with the guaranty upon the tag attached to the said fertilizer.

2. Defendant denies and says that it is not true that plaintiffs have been defrauded, and that they have suffered any damage.

3. Defendant denies and says that it is not true that the sample submitted to the State Chemist were fair samples, drawn as provided by law.

The pleas were demurred to generally and on the following grounds:

As to 1st plea:

1. Because the same presents an immaterial issue.

2. Because said plea does not traverse any matter alleged in plaintiff's declaration.

As to the 2nd plea:

1. Said plea is indefinite.

2. Said plea presents merely the conclusion of the pleader.

3. Said plea does not traverse any material allegations of fact upon which the charge of fraud is based.

As to the 3rd plea:

1. Said plea is indefinite in that it does not appear whether it is intended to deny that fair samples were submitted, or in what particular said samples were not drawn according to law.

Motion to strike pleas was filed, as follows:

As to the 1st plea:

1. Because the same presents an immaterial issue.

2. Because said plea does not traverse any matter alleged in plaintiff's declaration.

As to 2nd plea:

1. Said plea is indefinite.

2. Said plea presents merely the conclusion of the pleader.

3. Said plea does not traverse any material allegation of fact upon which the charge of fraud is based.

As to the 3rd plea:

1. Said plea is indefinite in that is does not appear whether it is intended to deny that fair samples were submitted, or in what particular said samples were not drawn according to law.

On hearing, the demurrer to the pleas was sustained and the defendants allowed ten days in which to amend their pleas.

The defendants declined to plea further, Judgment was had in due course and writ of error sued out.

It is well settled in this jurisdiction that parties to a contract may provide by the contract for liquidated damages in case of a breach of the contract and the courts will give effect to such provisions when under the circumstances the provision is reasonable and it is not apparent that it was the intention of the parties to provide for penalty. Greenblatt & Co. v. McCall, 67 Fla. 165, 64 So. R. 748; Sou. Menhaden Co. v. How, 71 Fla. 128, 70 So. R. 1000. In Fleicher et al. v. Virginia-Carolina Chemical Co., 82 Fla. 50. 89 So. R. 401, this Court in referring to Sections 2405 and 2406, Rev. Gen. Stats. of Fla., which was amended by Chapter 10128, Acts of 1925, say:

The question of the constitutional validity of the statutes authorizing the reception in evidence of the certificates of analyses of the State Chemist has been previously considered by this Court and a conclusion reached contrary to that now urged by counsel. Adams v. American Agricultural Chemical Co. 78 Fla. 362, 82 So. R. 850. The question was thoroughly examined in the opinion filed in that case and if it may be regarded as presented here there is no occasion for a further consideration of it. We are not disposed to modify the views expressed in that opinion. It may be remarked, however, that in the opinion in that case it is stated "that the statutes now under consideration were primarily designed to compensate the defrauded purchaser for the injury suffered;" that the Legislature had in mind the protection of the user of the fertilizer and that because of the impracticability of determining with certainty the amount of damages sustained in such cases the statutes fix an amount as liqui-

dated damages which may be awarded to the purchaser who has sustained injury because of the fraud of the manufacturer or vendor of the fertilizer from whom the purchaser acquired it, and it is strongly intimated in the opinion that the statutes should not be regarded as penal in their nature.

In the case of Goulding Fertilizer Co. v. Johnson, 65 Fla. 195, 61 So. R. 441, the Court say:

Where an answer to a bill for the foreclosure of a mortgage given to secure the purchase price of commercial fertilizer, alleges that the defendant had a sample of said fertilizer taken and chemically analyzed by the State Chemist in compliance with the provisions of Section 1271 of the General Statutes of 1906, and that upon such analysis by the State Chemist he discovered that he had been defrauded by reason of the fact that said analysis by the State Chemist showed that said fertilizer was deficient in the quantity of several material constituent elements, that it was represented to contain in the labels attached thereto by the Complainant, and that said fertilizer was worthless, held, that under Section 1272, General Statutes of 1906, that provides for the recovery by the purchaser under such circumstances of double the amount demanded by the vendor for such fertilizer, where the defendant offers in his answer to set off such statutory penalty against the complainant's demands, that it furnishes a legal defense to such bill, and when sustained by the proofs should defeat a recovery by the complainant.

It will be observed that the declaration in this case sets up fully that state of facts which the Court in the case of Goulding Fertilizer Co. v. Johnson held to be sufficient

10

when set up in an answer to constitute a valid defense in a suit brought to enforce the payment for fertilizer purchased.

It will also be observed that the pleas tendered in this case do not traverse any of the material allegations contained in the declaration. Sec. 2406, Rev. Gen. Stats. of Fla., as amended by Chapter 10128, was in force and effect in this State at the time of the alleged sale and delivery of the fertilizer and at the time of the institution and prosecution of the suit in this case and, therefore, the provisions of the statutes so in force must be construed as constituting a part of the contract, and a material part of the contract, between the parties, it being unlawful for the vendor of fertilizer to offer for sale or sell any fertilizer in this State except in compliance with the statutes pertaining thereto.

The statute makes the statement of analysis as shown on the package of fertilizer a part of the contract between the parties and the manufacturer guarantees that statement to be true, the statute constitutes certain false statements in this regard a fraud upon the purchaser and provides for liquidated damages flowing to the purchaser from the manufacturer when the purchaser shall have been so defrauded. The statute does not contemplate any other test of the value or efficiency of the fertilizer, except that which may be made by chemical analysis and it is immaterial whether the fertilizer sold was actually of greater or less intrinsic value that it would have been had it contained the ingredients in quality and quantity as set forth in the statement of the chemical analysis attached thereto. To adopt any other rule would be to nullify the force and effect of the statute and the purchasers of fertilizers having attached thereto the statement of the chemical analysis of such fertilizer would be without practical recourse against the manufacturer, howsoever false such statement might be found to be.

We think the statute when construed as a part of the contract providing for liquidated damages is not unreasonable in its terms. It is a matter of common knowledge that the cost of fertilizer constitutes only a fraction, while a considerable fraction of the expense of producing a crop and also that whether that crop results in a profit or loss may depend very largely upon the ingredients of fertilizer used in its production and, yet, there is no method known among men whereby it may be determined with certainty what the result of a crop would have been had the ingredients of fertilizer been different from that which was actually used.

The declaration sets forth sufficiently a legal cause of action. The pleas constituted no valid defense to the declaration.

The judgment should be affirmed and it is so ordered.

Affirmed.

WHITFIELD, P. J. AND STRUM, J., concur.

TERRELL, C. J. AND BROWN, J., concur in the opinion and judgment.

ELLIS, J., dissents.