**CHARLES PEMBROKE, joined by his wife, MARY PEMBROKE v. JAY CAUDILL and EMMA CAUDILL.**

37 St. (2nd) 538   June Term, 1948
November 16, 1948   Division A

*James T. Smith* and *George S. Saltsman,* for appellants.
*Forrest Hoffman,* for appellees.

SEBRING, J.:

Charles Pembroke and Mary Pembroke, his wife, instituted on action against the appellees for the recovery of liquidated damages under a written agreement for the purchase and sale of real property entered into by and between the parties to this appeal. A demurrer to the third amended declaration was sustained and the plaintiffs declined to plead over. Thereupon the trial court entered a final judgment in bar of the action. The plaintiffs have prosecuted an appeal from the judgment and question the decision of the trial court in sustaining the demurrer.

The written agreement upon which the plaintiffs predicated their action contained the following pertinent provisions:

"Received of Jay Caudill and his wife Emma Caudill, hereinafter called the purchaser, $6200.00 . . . Cash, check, as earnest money and in part payment on account of the purchase price of the following . . . Property known as El Mirasol Apartments located at 1206 Oak Street, Northeast, in the City of St. Petersburg, including all furnishings and furniture now in and on premises according to inventory, the total purchase

price being $67,500.00 . . . Payment to be made as follows: Cash, earnest money as acknowledged above, $6,200.00, cash upon closing deal, $34,400.00, balance of $26,900.00 covered by two mortgages in amounts of $19,400.00 and $7,500.00, respectively, to be assumed by purchaser at present rate of interest and amortization payments.

"Said earnest money is acknowledged and funds are to be held by the broker, subject to the following conditions:

"1. That Parham and Son (the brokers) shall hold said earnest money and act as escrow agent until closing of the deal; that one days shall be given for obtaining the owner's acceptance; and, in event of the owner's non-acceptance, the amount of the earnest money shall be promptly returned to the purchaser.

"2. That abstract certified to date, or title insurance commitment showing good and merchantable title, shall be delivered to the purchaser, and it is agreed that this transaction shall be closed and the purchaser shall pay the balance of the money due under this contract, and execute all papers necessary for the completion of the purchase within five days from the delivery or tender to him of abstract or title insurance commitment . . .

"3. That the property shall be conveyed by warranty deed . . . . That possession will be given upon passing of title . . .

"5. That in case of the failure of the purchaser to make either of the payments, or any part thereof, or to perform any of the covenants on his part made or entered into, this contract shall, at the option of the Seller, be terminated and voided and the purchaser shall forfeit said earnest money; and the same shall be retained by the Seller as liquidated damages, and the escrow agent is hereby authorized by the purchaser to pay over to the seller the said earnest money.

"6. That time is an essential part of this agreement . . ."

The third amended declaration to which the demurrer was sustained recited, in substance, that at the time of the execution of the contract and as evidence of the cash payment to be made "as earnest money" the appellee, Jay Caudill gave to Parham & Son, the real estate brokers who were acting as

agent for the sellers, his check drawn on an out-of-state bank in the sum of $6200.00; that said agents immediately placed the check with a local bank for collection but before the check could reach the out-of-state bank for payment, Jay Caudill stopped payment on the check and subsequently refused to perform or complete the contract to purchase the property; that the sellers thereupon "exercised their option and elected to sue the defendants for their promise to pay the stipulated damages" agreed upon in the contract.

The trial court sustained the demurrer to the third amended declaration on the ground that the clause in the contract was one providing for a penalty and not liquidated damages and that hence there could be no recovery without pleading and proof of the sustainment of actual damages. We shall confine and proof of the sustainment of actual damages. We shall confine ourselves to the single question of law upon which the trial court based its ruling.

Whether the sum stipulated in a contract to be paid in the event of a breach will be considered as a penalty or as liquidated damages is always a question of law to be determined by the court in each particular case. The real purpose in permitting a stipulation for damages to stand as compensation for a breach being "to render certain and definite that which appear to be uncertain and not easily susceptible of proof," Chace v. Johnson, 98 Fla. 118, 123 So. 519, the fact that a stipulation denominates a sum to be paid for breach of a contract as "liquidated damages" or as a "penalty" will not in and of itself be conclusive. The courts will always look to the nature of the contract, the terms and purposes of the whole instrument, the natural and ordinary consequences of a breach and the peculiar circumstances attending each case, to determine its real character and purpose. Smith v. Newell, 37 Fla. 147, 20 So. 249; Greenblatt v. McCall & Co., 67 Fla. 165, 64 So. 748; Arnold v. First Savings & Trust Co. of Tampa, 104 Fla. 545, 140 So. 660, 141 So. 608.

Though no fixed or settled rule can be stated by which the courts may always determine whether a stipulation for the payment of a fixed sum should be treated as a penalty or as liquidated damages, there appears to run throughout the

many cases in which the question has been considered the following controlling principle: Where Compensation for injury resulting from a breach of contract is reasonably susceptible of measurement by some adequate and approved legal standard, a stipulation providing for the payment of an amount which may easily be excessive with reference to the terms, nature and purpose of the contract, making it a matter held *in terrorem* over either party, should be construed as a penalty, even though it be specifically designated as liquidated damages. Greenblatt v. McCall & Co., 67 Fla. 165, 64 So. 748. Where the actual damages contemplated when the contract was made are in their nature uncertain and may so depend upon extrinsic considerations and circumstances as to be incapable of ascertainment with any reasonable degree of exactness, and the fixed sum stipulated to be paid is not disproportionate to the probable injury likely to result from a breach of the contract, effect should be given to the stipulation as one for liquidated damages, without regard to its designation or the amount of injury actually suffered as the result of the breach. Southern Menhaden Co. v. How, 71 Fla. 128, 70 So. 1000.

All this is but another way of saying that in the final determination of the question whether or not a stipulation should be construed as providing for a penalty or for liquidated damages the guiding principle for the courts to observe should be that of "just compensation" for injury resulting from the breach of the contract, and the controlling object should be to place the injured party in as advantageous posi‹ tion as he would have occupied had his contract not been broken. So long as the contracting parties keep this princip!‹ in view the courts will very generally allow them too agree upon such a sum as will probably be the fair compensation for the breach of a contract. But when they go beyond this, and undertake to stipulate, not for compensation, but for a sum entirely disproportionate to the measure of liability which the law regards as compensatory, the court will refuse to give effect to the stipulation and will confine the parties to such actual damages as may be pleaded and proved. See Sedgwick on Damages, 9th Ed. p. 779, Sec. 406; also compare Smith v.

Newell, supra; Greenblatt v. McCall & Co., Supra; Southern Menhaden Co. v. How, supra; Atlantic & Gulf Ferilizer Co. v. Mayo, 97 Fla. 1, 119 So. 513; Poinsettia Dairy Products Inc. v. Wessel Co., 123 Fla. 120, 166 So. 306.

In every case involving a contract providing for a fixed sum to be paid in the event of a breach, the real issue involved, therefore, is whether the contract adheres to the fundamental rule of "just compensation" which we have stated and whether the parties intend that the sum named shall be paid over to the injured party for the particular breach which has occurred, Moses v. Autuono, 56 Fla., 499, 47 So. 925; Arnold v. First Savings & Trust Co. of Tampa, 104 Fla., 545, 140 So. 660.

Under the contract involved in this appeal the parties agreed that the appellees should pay as the purchase price of the property the sum of $67,500.00. They agreed that the appellees, at the time they signed the contract of purchase, should pay the sum of $6200.00 "as earnest money and in part payment on account of the purchase price" and should pay the balance of the purchase price at the closing of the transaction. They agreed that in payment of the balance of the purchase price the appellees should assume two subsisting mortgages of the face amount of $26,900.00, at their then rates of interest and amortization payments, and pay in cash the sum of $34,400.00. They agreed that possession of the property should not be surrendered to the appellees until the passing of title. They agreed that the transaction should be closed and that the appellees should pay the balance of the money due under the contract, and execute all papers necessary for the completion of the purchase within five days from the delivery of abstract of title or title insurance commitment. Finally, they agreed that time should be of the essence of the contract and that if the appellees failed "to make either of the payments, or any of the covenants on (their) part entered into," the "earnest money" should be forfeited and retained by the sellers as liquidated damages.

In our view the contract clearly provided for a penalty and not for liquidated damages.

There was nothing in the transaction which could have rendered the damages which might reasonably have been expected to flow from a breach of the contract uncertain, conjectural or speculative. The only real damages which could have been sustained by the sellers as the result of the purchasers failing to go through with the contract were the profits to be realized from the sale. As to these, they were definitely ascertainable in accordance with settled legal principles for the admeasurement of damages; the measure of the sellers' damage ordinarily being in such cases the difference between the agreed purchase price and the actual value of the property at the time of the breach of the contract of purchase, less the amount paid, Smith v. Newell, 37 Fla. 147, 20 So. 249; Woods-Hoskins-Young Co. v. Dittmarr, 102 Fla. 1000, 136 So. 710. The brokers' commissions could not have been an element of damage taken into consideration by the parties at the time the contract was made, because the broker would have been entitled to his commission only in the event he had sold the property or had produced a purchaser ready, able and willing to purchase upon the terms and conditions fixed by the sellers. Obviously, in the case of a breach of the terms or conditions of a contract whereby the prospective purchaser fails to go through with the deal, a real estate broker neither sells the property nor produces a purchaser ready, able and willing to buy and hence will not become entitled to a commission from the owners of the property for services rendered. No question of damages by reason of the purchasers being in possession of the property could have been within the minds of the parties at the time the contract was executed, for by the terms of the contract the buyers were not to be let into possession until the entire purchase price had been paid and all papers signed necessary to the completion of the purchase.

Furthermore, by the strict and literal terms of the contract the sellers were privileged to declare the contract at an end and the "earnest money" forfeited upon the failure of the purchasers to comply with any one of several covenants in the contract, including the covenant requiring the purchasers to pay the balance of the purchase price and to execute all papers necessary for the completion of the purchase "within

five days from the delivery or tender of abstract or title insurance commitment." The fact that the parties entered into an agreement which placed the sellers in the position that they could bring the contract to an end and yet retain the "earnest money" if even as little as one day's delinquency occurred in paying the balance of the purchase money and executing papers necessary to complete the purchase was in and of itself enough to require the trial court to hold that liquidated damages were never intended by both parties to the contract and hence that the stipulation should be construed as a penalty authorizing the recovery of actual damages only.

The judgment appealed from is affirmed.

It is so ordered.

THOMAS, C. J., TERRELL and CHAPMAN, JJ., concur.