96 So.2d 212 (1957)
Fred L. LEWIS, Rose A. Lewis and Elizabeth M. Anstine, Appellants,
v.
Ralph H. BELKNAP, Appellee.
Supreme Court of Florida, Division B.
June 28, 1957.
Stanley M. Beckerman and Ralph R. Quilliam, Hollywood, for appellants.
Phillips & Phillips, Miami, for appellee.
DREW, Justice.
Ralph H. Belknap (purchaser) sued Fred L. Lewis and Rose A. Lewis (sellers) and Elizabeth M. Anstine (broker) to rescind a contract to purchase certain real estate and to recover a deposit of $1,500 made thereon. From a decree rescinding the contract and ordering the return of the deposit the sellers and the broker appealed.
The subject contract in the form of a deposit receipt is regular in all respects. Its legal sufficiency is not questioned in these proceedings. It is duly signed by the broker, the seller and his wife and Ralph H. Belknap as purchaser. It fixes a purchase price of $31,500 payable according to the express terms of the contract as follows:
"The Purchaser agrees to pay Ten Thousand Dollars ($10,000.00) cash upon closing this transaction, of which the above One Thousand Five Hundred Dollar ($1500.00) deposit is a part thereof.
"The Purchaser further agrees to execute at his expense a First Mortgage on the above described residence for $20,000.00, with terms to be agreed upon.
"The Seller agrees to take back a Second Mortgage in the amount of $1500.00, or the equivalent between the First Mortgage and the selling price, for a period of two years, at the rate of 6% interest."
The record shows that Mr. Belknap gave the broker the sum of $500 in the beginning to be held by the broker for the sellers *213 pending the closing. Later he advanced an additional $1,000. After he returned north, a copy of the contract was sent him by the broker with a request that he approve two minor changes in the contract, one with reference to changing the sum of the deposit from $500 to $1,500 and the other changing the closing date to March 1st. Mr. Belknap immediately advised the broker that he approved such changes and authorized her to make them and initial them on his behalf. In that letter of January 31st he alluded to certain change in his plans and authorized the broker to put the property on the market for resale. The record further shows  with reference to the provision in the contract concerning the $20,000 mortgage  that about two weeks after the contract was signed, he sent the Coral Gables Bond and Mortgage Company an application for a loan of $20,000 accompanied by his check for $200 on account of expenses in connection with said loan. In that letter he gave references and stated the closing date to be March 1st.
Mr. Belknap returned to Florida about the end of February and sometime thereafter and prior to March 10th (the time for closing had been extended to that date) he advised the broker that his wife did not like the place and would not sign the mortgage. According to the record, Mr. Belknap took no further steps with reference to procuring the mortgage or another mortgage nor did he make any attempt to close the transaction. In the meantime, the sellers had tendered a warranty deed and all papers to effectuate the closing.
After the time for closing had passed without further word from Mr. Belknap, and pursuant to written demand of the sellers' attorney, the broker divided the deposit between herself and the sellers in the manner provided by the express terms of the contract. Sometime thereafter this suit was commenced by the purchaser for the purpose of rescinding the contract and procuring a return of the deposit paid thereupon upon the sole ground that he, Ralph Belknap, "has been unable to perform the conditions of said contract on his part hereinbefore set forth and that he has been prevented from so performing, for that the wife of plaintiff refused and still refuses to execute any mortgage or mortgage instruments encumbering the said property. That at the time he was thus prevented from completing the contract, plaintiff was and thereafter remained and still remains ready, willing and able to perform, except that he was prevented from so doing by the acts hereinabove alleged."
We find no basis in this record upon which we can sustain the chancellor below in either his ruling denying the motion of the defendants to dismiss the complaint for failure to state a cause of action or in the entry of the final decree after testimony was taken.
The reason advanced by the purchaser for his failure to consummate the transaction affords no legal basis or justification for the non-performance of the contract. He had agreed to purchase said property under a contract clear and definite in all respects. It was his obligation under the contract to procure the mortgage or if he could not do so, to pay the contract price in cash. The fact that his wife would not sign a mortgage in order to raise the purchase price is of no consequence whatever under the provisions of the contract he signed. Nor is there the slightest intimation in this record that there was any understanding or agreement so far as the sellers were concerned to take or assume any responsibility in connection with the method of financing. Moreover, the record very clearly establishes that he negotiated directly with the mortgage company and later abandoned the transaction.
The fact that the wife refused to sign the mortgage did not render the contract impossible of performance under any theory of law. When the courts speak of "impossibility of performance" in this context it refers to the nature of thing to be done  *214 not the ability of the party to perform what he has agreed to do. 12 Am.Jur., Contracts, Sec. 370. 17 C.J.S. Contracts § 451, p. 931 et seq. Moreover, the requirement of the contract is that the purchaser agreed to "execute at his expense a first mortgage". (Emphasis supplied.) If the mortgage was for the purpose of securing a portion of the purchase price to the vendor the signature of the wife is not required. Hatch v. Trabue, 1930, 99 Fla. 1169, 128 So. 420; Taylor v. Mathews, 1907, 53 Fla. 776, 44 So. 146; Jones on Mortgages, 8th Edition, Sec. 584; Redfearn's Wills and Administration of Estates, Sec. 247. Prior to his suit Mr. Belknap had no information from the mortgage company that a mortgage on his signature without that of his wife would be refused. Mr. Belknap never communicated with the loan company at any time subsequent to his letter enclosing his application for a loan and his check for $200 heretofore alluded to. The president of the loan company never saw nor talked to Belknap nor did Belknap ever attempt to communicate with the loan company after the 14th of February.
It is argued by appellee (purchaser) that even assuming there had been a complete breach of contract by him, the decree of the chancellor must be affirmed because the sellers failed to establish by competent pleadings or evidence that they suffered any damages by virtue of such breach of contract. In support of this contention the purchaser relies heavily on the cases of Pembroke v. Caudill, 1948, 160 Fla. 948, 37 So.2d 538, 6 A.L.R.2d 1395; Paradis v. Second Ave. Used Car Co., Fla. 1952, 61 So.2d 919; and Haas v. Crisp Realty Co., Fla. 1953, 65 So.2d 765.
We do not think the cited cases are applicable here. In Pembroke v. Caudill we affirmed a judgment of the lower court denying recovery of an amount stipulated as earnest money in a contract to purchase realty because of our view that the contract clearly provided for a penalty and not for liquidated damages. It is pertinent, however, to observe that in that case we very carefully pointed out:
"We have made no attempt to settle certain questions which may arise under a stipulation similar to the one we have considered, in a case where a deposit of money has actually been made by the prospective purchaser for the benefit of the owner. We are aware of the fact that some of the decisions on that precise issue are to the effect that under such circumstances the questions as to the intention of the parties at the time they made the contract, and as to whether damages which may be sustained by the owner are easily susceptible of proof, are deemed to be foreclosed by the actions of the parties; but we express no opinion on the point, because we have no such issue before us." [160 Fla. 948, 37 So.2d 542.]
Paradis v. Second Ave. Used Car Co. is not applicable for the basic reason that in that case the purchaser in good faith questioned the title to the property involved and, when his objections were not timely met, we held he was entitled to a refund of the deposit. Haas v. Crisp Realty Co. involved a case of a forfeiture of a payment of over $6,000 on a total purchase price of a little over $15,000. The amount of the deposit forfeited in that case was found, as the court said, "without a showing of actual damage, to be `shocking to the conscience of the court.'" [65 So.2d 768.]
We think the case decisive of the issue here is Hyman v. Cohen, Fla. 1954, 73 So.2d 393. A lease was involved in Hyman v. Cohen but the basic principles discussed are clearly applicable in this case. In that case we were dealing with the question of whether a security deposit under the provisions of the lease there involved constituted a penalty or liquidated damages. Before proceeding to examine the holdings in Hyman v. Cohen, we deem it appropriate to note at this point that the pertinent *215 provision of the contract which is now under consideration with reference to the deposit reads as follows:
"It is mutually agreed that this transaction shall be closed and the purchaser shall pay the balance of the first payment and execute all papers necessary to be executed by him for the completion of his purchase within March 1st, 1956 days from the delivery of the aforementioned abstract; otherwise the herein named Escrow Agent is hereby directed by both seller and purchaser to divide the moneys being held by said Escrow Agent between the seller and broker herein named as hereinafter provided. It is further agreed that in the event of such procedure the Escrow Agent is relieved from any and all further liability. It is further agreed that in case this transaction is not completed due to any default or failure on the part of the purchaser, the said purchaser shall in that event become liable to the broker for brokerage commission as hereinafter provided. It is further agreed that in case of default by the purchaser, the seller may at his option take legal action to enforce this contract, in which event the purchaser shall pay reasonable attorney fees and court costs; or else the seller may at his option retain one-half of the deposit herein paid as consideration for the release of the purchaser by the seller from any and all further obligations under this contract to the seller, which release shall be implied from such act of retention by the seller."
The sellers and the broker in notifying the purchaser of the division of the sum deposited between themselves relieved the purchaser from further liability under the contract in accordance with the express understanding of the parties. It was the obvious intention of all concerned that if the sellers and the broker so elected, they were entitled to dispose of the matter upon a complete breach of the contract as we have held there was in this case. These were mature people dealing with each other at arms length and we hold that under the circumstances of this case and the conditions under which the sum was deposited, that such amount when accepted by the sellers and broker is presumptively liquidated damages and not a penalty and we reaffirm conclusions reached in Hyman v. Cohen, supra, in this respect and apply it to executory contracts for the purchase of real estate.
Reversed and remanded with directions to dismiss the complaint.
TERRELL, C.J., and HOBSON and O'CONNELL, JJ., concur.