**HUNGERFORD CONSTRUCTION COMPANY and Continental Casualty Company, Appellants,**

v.

**FLORIDA CITRUS EXPOSITION, INC., also known as Florida Citrus Showcase, Inc., Appellee.**

No. 26426.

United States Court of Appeals
Fifth Circuit.

April 22, 1969.

Rehearing Denied June 25, 1969.

———◆———

Howard P. Ross, Anthony S. Battaglia, St. Petersburg, Fla., Raymond J. Malloy, Tampa, Fla., Parker, Battaglia & Ross, St. Petersburg, Fla., for appellants.

J. Hal Connor, Winter Haven, Fla., J. A. McClain, Jr., Tampa, Fla., Summerlin, Connor & Threadgill, Winter Haven, Fla., McClain & Turbiville, Tampa, Fla., for appellee.

Before PHILLIPS,* BELL and MORGAN, Circuit Judges.

BELL, Circuit Judge:

The litigation giving rise to this appeal had to do with the construction of a building at Winter Haven, Florida. The building, which was to serve as an exhibition center for the citrus industry, had a poured concrete dome 170 feet in diameter as its roof. The dome was designed to be waterproof without independent waterproof covering. It developed that cold joints were formed in the process of pouring the concrete for the dome. The result was that the dome leaked and the acoustical plaster on the under surface of the dome was damaged. The damaged plaster was replaced by the contractor but subsequent leaks left it in a discolored condition.

The contractor sued for the balance due on the contract price. The building owner filed a counterclaim against the contractor and its surety, seeking recovery of damages alleged to have been sustained by reason of the improper construction of the dome.

The evidence was sufficient to make a jury question on improper construction through the formation of the cold joints.[1] The jury returned a verdict in the full amount claimed by the contractor as the balance due on the contract, $27,973.60. The building owner was awarded the sum of $77,750.00 as damages on the counterclaim. The contractor and its surety appeal.

There are four assignments of error. First, a part of the damages awarded on the counterclaim rested on a liquidated damages provision in the contract. Appellants contend that this provision was not applicable under the facts. Second, it is urged that the evidence which formed the basis of that portion of the award of damages stemming from the defect in the dome and for the cost of remedying the defect and the damage to the acoustical tile did not meet the standard of reasonable certainty as to causation or amount. Without reciting this evidence, we think it sufficient to say that it was adequate and therefore this assignment of error is rejected. We likewise reject the contention that the owner was barred by the failure to mitigate damages. This contention is not sustainable by the facts. Lastly, it is claimed that reversible error was committed by the court in permitting the jury to be re-empaneled for the purpose of correcting an arithmetical error in the verdict after it had been discharged. The verdict for the owner on the counterclaim was increased from $49,500.00 to $77,750.00 in the corrective process. We reverse on the first assignment of error

---

* Of the Tenth Circuit, sitting by designation.

1. The contractual responsibility of the contractor with respect to the dome was as follows:

"The contractor shall be responsible for the work and every part thereof, and, since by its very nature the future soundness of the dome structure will depend on the integrity of the concrete pour, all precautions must be taken by the contractor in this regard so that the end result will be in conformity with the drawings and as described in the specifications."

as to damages on the counterclaim and for that reason the decision on the jury question will be pretermitted. We affirm as to the award to the contractor.

The contract required that all work under the contract be completed in 180 calendar days and that liquidated damages in the amount of $200.00 per calendar day of delay would be assessed thereafter.[2] It was undisputed that the building was delivered to the owner within 180 days and that it was in continuous use thereafter. The owner contended that the liquidated damages clause was nevertheless applicable because of loss of secondary use due to the roof leak. The liquidated damages question is vital because, as stated, a part of the sum awarded the owner by the jury was necessarily for liquidated damages since the total exceeded the proof of actual damages.

The gist of the testimony regarding diminution in use from the leaking roof was as follows. From the beginning, after heavy rains, the plaster became discolored and some fell to the floor. The damaged plaster was replaced by the contractor but the leaks continued with subsequent discoloration of plaster. The building was to be used by the owner mainly for a year round office and for a citrus festival during February and March. The testimony was that the building was fully occupied on schedule by the owner for its use and that it was thereafter continuously so occupied. In addition, as a secondary use, the owners had hoped to make it available on a rental basis to others who might want to use it for exhibition purposes. The only testimony as to loss of secondary use was that the owners hoped to charge a year round admission fee to those wishing to see the building but the claim was that this idea was abandoned because of the unsightly plaster. There was also testimony that the owners lost an opportunity for the same reason to rent the building on one occasion for an automobile dealer's exhibition or show.

In our view of the Florida law the court erred in submitting the liquidated damage provision of the contract to the jury as a basis for damages. Submission would have been entirely proper had the building not been delivered on schedule. The provision was, however, a penalty clause when allowed as a basis for damages for loss of secondary use under the facts here.

The court recognized that under the Florida law the question whether the liquidated damages provision was applicable, or whether it was to be construed as a penalty and thus be inapplicable, was a question of law for the court. See Pembroke v. Caudill, 1948, 160 Fla. 948, 37 So.2d 538, 6 A.L.R.2d 1395. In that case the court went on to say:

"* * * in the final determination of the question whether or not a stipulation should be construed as providing for a penalty or for liquidated damages the guiding principle for the courts to observe should be that of 'just compensation' for injury resulting from the breach of the contract, and the controlling object should be to place the injured party in as advantageous position as he would have occupied had his contract not been broken. So long as the contracting parties keep this principle in view the courts will very generally allow them to agree up-

---

2. The contract provides in pertinent part:
"All work under this Contract shall be completed within 180 calendar days. * * * A penalty will be invoked for later completion. * * *

* * * * *

"The amount of $200.00 per calendar day will be assessed as the fixed, agreed liquidated damages to be deducted by the Owner from the sums due under other contract provisions for each and every calendar day of delay in completion of the work beyond the expiration time above specified and as provided." (App. 161, 162)

The sum of $200.00 was treated as $250.00 throughout the trial by the court and counsel. The correctness vel non of the figure is not relevant to our disposition of the appeal.

on such a sum as will probably be the fair compensation for the breach of a contract. But when they go beyond this, and undertake to stipulate, not for compensation, but for a sum entirely disproportionate to the measure of liability which the law regards as compensatory, the courts will refuse to give effect to the stipulation and will confine the parties to such actual damages as may be pleaded and proved."

Using this statement of the Florida law as a test it becomes apparent that under the circumstances here the provision in question amounts to a penalty. We deal only with the question of loss of secondary use. The testimony was clear that the building was available to the owner for the primary use. The evidence as to loss of secondary use was entirely speculative. One auto show may have been lost but there is no evidence as to the amount of rent which would have been realized out of this transaction or whether the loss occurred during the period in suit. The only other loss

of use claimed was in the form of a daily admission charge to the public to see the building and its contents. The proof demonstrated only that this use did not rise above a suggested use. In any event, such loss of secondary use as there may have been is capable of proof. The proof that was offered was entirely disproportionate to the sum of $200.00 or $250.00 per day. It is thus clear that the claim for liquidated damages was far in excess of such compensatory damages as would be indicated from the slight deprivation of secondary use claimed by the owner.

The case is left in this posture. There must be a new trial on the question of the damages sustained by the owner. The liquidated damages provision of the contract cannot be used as a basis for damages. The judgment is affirmed as to claim of contractor.

Affirmed in part; reversed and remanded in part for further proceedings not inconsistent herewith.