471 So.2d 113 (1985)
DADE NATIONAL DEVELOPMENT CORP. and Florida Coast Development Group, Appellants/Cross Appellees,
v.
SOUTHEAST INVESTMENTS OF PALM BEACH COUNTY, INC., a/K/a Southeast Investments, Inc., Appellee/Cross Appellant, and
Freshman & Freshman, P.A., Appellee.
No. 84-1334.
District Court of Appeal of Florida, Fourth District.
May 29, 1985.
Rehearing Denied July 10, 1985.
*114 Marshall B. Wood, Jr., and Stephen R. Phillips of Wood, Cobb, Murphy & Craig, West Palm Beach, for appellants/cross appellees.
F. Kendall Slinkman, West Palm Beach, for appellee/cross appellant.
DELL, Judge.
Dade National Development Corp. and its assignee, Florida Coast Development Group (hereinafter referred to as buyer) appeal the amount awarded on their claim for liquidated damages. Southeast Investments of Palm Beach County, Inc. (seller) cross appeals.
On March 10, 1982, seller and buyer entered into separate contracts for the purchase of two parcels of real estate. The contracts provided for purchase prices of $1,085,000 and $2,300,000 respectively. Buyer submitted two letters of credit as deposits. The contracts conditioned buyer's duty to close upon approval of its application for zoning and platting. The parties agreed that so long as buyer proceeded diligently towards obtaining zoning and platting, it would be entitled to an indefinite extension of time to close.[1] In exchange, seller reserved the right to cancel the contracts at any time:
If the Seller desires to cancel or causes the Contract to be cancelled for any reason whatsoever, except as otherwise provided in the Contract, it is agreed that the Seller shall pay to the Buyer One Hundred Thousand ($100,000.00) Dollars if said cancellation occurs during the *115 first six (6) months after the date of this Contract, Two Hundred Thousand ($200,000.00) Dollars if the cancellation occurs after six (6) months from the date of this Contract... . This right of cancellation shall apply to the Seller only and Buyer shall have no rights of cancellation pursuant to this Paragraph.[[2]]
In August of 1982, the county commission denied buyer's initial application for rezoning, but informed buyer that in April of 1983 it could submit another application. On October 14, 1982, seller demanded a December 1, 1982 closing, and stated that it intended to make a demand on buyer's letters of credit and sell the property to other interested parties if buyer failed to close. On October 22, 1982, buyer notified seller that it intended "to continue to proceed with the zoning according to the Contracts." Seller informed buyer that it would consider buyer's failure to close a default. The closing did not take place and on December 10, 1982, seller demanded payment under the letters of credit. Upon refusal of its demand, seller brought suit seeking to declare buyer in default under the contracts. Buyer counterclaimed, seeking payment of the sums provided for in the cancellation clauses.
The trial court found that the parties, by the insertion of the provision extending the time to close "for whatever time is necessary," had agreed to a reasonable time for buyer to obtain zoning and platting. The court concluded that a reasonable time included the time necessary to process a second application for zoning and platting, and that buyer did not default by failing to close on December 1, 1982. The trial court also found that the sums specified in the cancellation clauses of the contracts bore no relationship to buyer's actual damages, and concluded that the sums constituted unenforceable penalties. Thereafter the court awarded buyer its out-of-pocket expenses of $120,000, plus ten percent pre judgment interest, rather than the $400,000 specified in the cancellation clauses.
Buyer contends that the trial court erred when it failed to construe the cancellation clauses as liquidated damage provisions, and when it failed to award the total sum of $400,000 provided in the clauses. Seller cross appeals and contends that it did not breach the contracts, and that the trial court erred when it awarded damages and prejudgment interest to buyer.
Contrary to seller's contention, the record demonstrates that buyer did not default and that seller prematurely terminated the contracts, thereby invoking the terms of the cancellation clauses. However, the record does not support the trial court's construction of the cancellation clauses as penalties, rather than liquidated damage clauses. The Florida Supreme Court stated in Pembroke v. Caudill, 160 Fla. 948, 37 So.2d 538 (1948), that when damages were readily ascertainable at the time of breach, then a liquidated damage clause would be construed as a penalty. Later, the Supreme Court in Hutchison v. Tomkins, 259 So.2d 129 (Fla. 1972), receded from the rationale of Pembroke v. Caudill, and adopted the reasoning of Hyman v. Cohen, 73 So.2d 393 (Fla. 1954):
[I]n Hyman the Court concluded that it was necessary for the damages to be readily ascertainable at the time of the drawing of the contract in order for a liquidated damage clause to constitute a penalty.

We are convinced that the Hyman rationale provides the sounder approach to the problem of ascertainability of damages. Damages, especially in real estate transactions, are nearly always ascertainable at the time a contract is breached, because, as the Pembroke opinion points out, the measure of damages involves determining the difference between the agreed purchase price and the market value of the land as of the date of breach. Accordingly, the rule in Pembroke must have, when followed in letter and spirit, (as it was by the District Court in this case) a chilling effect on contract negotiations where the parties *116 wish to include a provision for liquidated damages.
259 So.2d at 131-32 (emphasis added).
The Hyman court posed two questions which must be answered in order to determine whether a forfeiture provision constitutes a penalty or liquidated damages:
First, were the damages consequent upon a premature termination of the lease by the lessor readily ascertainable? And it should be noted that this question is to be determined by a consideration of the status of the parties at the time the contract was entered into, and not at the time of the breach. As stated by Pomeroy, ibid., Sec. 440b, page 231:
"It may be, as the contract works out, that it would be easy to ascertain the damages for the breach of it, or to prove that there were none. But if the status of the parties at the time of the contract was such that it would be difficult or impossible to have anticipated the damage for a breach of it, and there was a positive element of damage, then, under the authorities, there is no reason why that may not be anticipated and contracted for in advance."
... .
Second, is the sum stipulated to be forfeited so grossly disproportionate to any damages that might reasonably be expected to follow from a premature termination of the lease as to show that the parties could have intended only to induce full performance thereunder, rather than to liquidate their damages? And here, again, we are dealing with the intention of the parties at the time of entering into the lease agreement; and there is nothing in the record here to show that the parties believed, at the time of entering into the agreement, that they were stipulating for the forfeiture of a sum out of all proportion to the damages which might reasonably be sustained by the lessor upon the premature termination of the lease.
73 So.2d at 401 (emphasis added).
Application of the Hyman test to the facts of this case requires us to hold that the trial court erred when it construed the cancellation clauses as penalties. First, the record demonstrates that when the parties negotiated the amounts reflected in the cancellation clauses, buyer considered many factors. These included: time (evidenced by the increase in payment if seller cancelled after six months); the restriction upon the use of capital; the inability to enter into other investments during the course of this project; expenses for architectural, engineering, and legal consultation; expenses for the services of buyer's personnel; and loss of anticipated profits. It is apparent that the nature of buyer's potential damages precluded the parties from readily ascertaining the amount of those damages at the time they executed the contracts.
Second, we do not view seller's obligation under the cancellation clauses so disproportionate to buyer's potential damages that it could only have been included to induce full performance, rather than to liquidate damages. Seller's obligation under the $2,300,000 contract amounted to 8.7% of the purchase price and amounted to 18% of the purchase price under the $1,085,000 contract. The sums agreed to by the parties do not appear unreasonable in relation to the scope of buyer's potential damages at the time of execution of the contracts. With regard to the actual intent of the parties, the record contains ample evidence, including the testimony of seller's attorney, to establish that the sums were not included solely for the purpose of inducing performance. Seller's attorney testified:
[W]e finally determined that, look, this really just works to our benefit, in other words, if somebody should come up with a bigger and better price we'll have the right to sell as long as we pay these people "X" number of dollars. And that's how we left the understanding of that particular paragraph to be.
... .
Yes, it gave us an option to rescind the contract,... .
*117 Hyman presents a final consideration. In Hyman, the Florida Supreme Court acknowledged that even a liquidated damage clause will not be enforced if it is unconscionable in light of circumstances existing at the time of the breach.
The better result, in our judgment, as Hyman contemplates, is to allow the liquidated damages clause to stand if the damages are not readily ascertainable at the time the contract is drawn, but to permit equity to relieve against the forfeiture if it appears unconscionable in light of the circumstances existing at the time of breach. For instance, assume a situation in which damages were not readily ascertainable at the time the contract was drawn, and the parties agreed to a liquidated damage provision of $100,000. Purchaser later repudiated the contract; vendor resold the land to another party, which because of fluctuations in the real estate market, resulted in a loss to himself of only $2,000. In such a case a court following the Hyman theory would allow the liquidated damage clause to stand, because damages were not readily ascertainable at the time of drawing the contract, but would, as a court of equity, relieve against the forfeiture as unconscionable. Under the Pembroke theory the liquidated damage clause would be struck down on its face without any consideration of vendor's actual damages.
Hutchison v. Tompkins, 259 So.2d at 132. In this case, we do not consider the relationship between buyer's losses at the time of the breach and seller's obligation under the contracts as one which requires equity to intervene.
We find no merit in the points raised by seller in its cross appeal.
Accordingly, we reverse that part of the judgment which awarded appellants the sum of $120,000 and remand this cause to the trial court with directions to award appellants the sum of $400,000 together with interest at the rate of 10% per annum from December 10, 1982. We affirm the final judgment in all other respects.
AFFIRMED IN PART, REVERSED IN PART and REMANDED.
ANSTEAD, C.J., and WALDEN, J., concur.
NOTES
[1] The contracts stated, "Buyer shall be entitled to an extension to close for whatever time is necessary as long as Buyer is proceeding diligently towards obtaining the zoning and platting according to the procedure of this Contract and delays are not through the fault of Buyer." (Emphasis added.)
[2] This clause appears in both contracts.