In re **FLORIDA PRECAST CONCRETE, INC., Debtor.**

**FLORIDA PRECAST CONCRETE, INC., Plaintiff,**

v.

**CITY OF ORLANDO, Defendant.**

**Bankruptcy No. 89–0832–8P1.**
**Adv. No. 89–247.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

March 22, 1990.

Don Stichter, Tampa, Fla., for plaintiff.

Wesley C. Powell, Michael G. Williamson, & Richard B. Webber, II, Orlando, Fla., for defendants.

Richard E. Stringer, Orlando, Fla.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 11 reorganization case and the matter under consideration is an adversary proceeding filed by Florida Precast Concrete, Inc. (Debtor), against the City of Orlando (City), seeking to "compel turnover of property of the estate" [sic] and payment of money due under certain contracts. The claim in Count I of the five-count Complaint is based on an alleged breach of contract by the City and requests an order directing the City to pay the Debtor all sums remaining due under two construction contracts and change orders. The claim in Count II seeks an order directing the City of Orlando to turn over all sums due under the two agreements pursuant to § 542 of the Bankruptcy Code. The claim in Count III is also based on an alleged breach of contract by the City and seeks payment for services performed post-petition by the Debtor pursuant to the two construction agreements and change orders. The claim in Count IV alleges that the construction work to be performed by the Debtor was delayed and made more difficult by the City; that the insistence and directions of the City to the Debtor which required the Debtor to complete its work within the original time limitations constituted an order to the Debtor to accelerate its work. Based on the foregoing, the Debtor seeks a money judgment for additional costs incurred by the Debtor and

a reasonable profit for the accelerated work required by the City. The claim in Count V asserts that the City required the Debtor to complete the contract work to a higher degree of completion than was required by the original contract and, therefore, the Debtor claims costs and reasonable profit on account of an "over inspection" by the City of the Debtor's work.

The City has filed its Answer and also asserted affirmative defenses, along with a five-count Counterclaim. In Count I, the City seeks an order declaring that the retainage withheld by the City in the amount of $305,706.67 is not property of the estate and that the City may withhold such retainage until such time as final completion of the construction project is achieved. The claim in Count II seeks a set-off pursuant to § 553 of the Bankruptcy Code of liquidated damages in the amount of $454,000.00 against the sums remaining due under the new contracts. The claim in Count III also requests a set-off pursuant to § 553 of the Bankruptcy Code. However, rather than seeking liquidated damages, the City in this Count seeks actual damages in the amount of $514,719.00. The claim in Count IV is a claim for indemnification from the Debtor for damages allegedly caused by the Debtor's delay in completion of the construction contracts and interference and obstruction of the work of other contractors in the amount of $514,759.00. Finally, the claim in Count V seeks adequate protection for the City's interest in a one-year warranty of the work performed by the Debtor.

The facts as established at the final evidentiary hearing which are relevant and germane to the disposition of this cause are as follows:

The Debtor is a contractor engaged in the business of the manufacture and erection of architectural precast concrete panels and other concrete pieces used in large commercial construction projects.

On February 8, 1989, the Debtor filed a voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. Prior to the filing of the Petition, the Debtor entered into two contracts with the City to perform certain work on a project known as "The Orlando Arena".

The first contract was entered into on March 25, 1988. (Debtor's Exh. P–1). This contract, referred to as "Bid Package 54", required the Debtor to manufacture and erect certain architectural precast panels to form a portion of the outside skin of the Orlando Arena. In addition, the Debtor was to provide architectural precast pieces formed to fit over poured-in-place concrete. These pieces are used to form a wall which accommodates seating in the outside areas and are known as "seat walls". The second contract, known as "Bid Package 60" was dated October 17, 1988, and required the Debtor to provide architectural precast concrete stairs (Plaintiff's Exh. P–2).

The City also contracted with Gilbane Building Company (Gilbane) to act as construction manager for the Orlando Arena Project. The City acted as an owner-builder and contracted with numerous other contractors to build various portions of the Arena Project. Although the names and functions of all of the individual contractors were not put in evidence, it is clear that there was a roofer, a glass block contractor, a contractor to pour the cement for the foundation for the stairs, a contractor to pour concrete in the landscaping area, a sheetrock contractor, and an electrical contractor. It appears that there were approximately thirty contractors involved in the project.

As noted, Gilbane acted as construction manager and the Debtor's point of contact with the City during construction. The Debtor and the City had very little direct contact during the construction until some time after the opening of the Orlando Arena on January 29, 1989, and the Debtor and the City did have substantial contacts during the "close-out" phase of the project in the form of negotiations between Mr. Charles, a consultant employed by the Debtor and Mr. Kotzin, an employee of the City's Bureau of Construction Management, who acted as a liaison between City Hall and Gilbane.

The Debtor claims that the City owes it unpaid contract balances under both con-

tracts and additional sums for extra work performed pursuant to change orders. The Debtor also claims that the City required the Debtor to perform additional services after substantial completion of the contract to repair damage caused by other contractors on the job.

In opposition, the City asserts that the Debtor is liable for liquidated damages for failure to meet the substantial completion deadline required in Bid Package 54. In addition, the City alleges that the Debtor delayed other contractors in completing their portions of the construction and, therefore, the City was required to pay additional monies to those contractors. Although the City initially asserted that the Debtor was liable for liquidated damages under Bid Package 60, counsel for the City announced in open court that this claim would be withdrawn and that the City would not offer any proof as to that issue.

The original contract price for Bid Package 54 was $2,000,000.00. The City paid $1,782,761.04, leaving a balance due under the original contract of $217,238.96. As to Bid Package 60, the original contract amount was $747,000.00, which was increased by Change Order No. 1 in the amount of $314,000.00, for a total revised contract amount of $1,061,000.00. The City paid $954,900.00 and the remaining balance due is $106,000.00. In addition, the City also required the Debtor to perform additional work to prepare a ramp to receive precast panels and caps. The evidence presented at trial clearly shows that the amount due for performance of this additional work is $4,185.08. (Debtor's Exh. P–379). The City further requested the Debtor to fabricate four additional precast panels which were not required by the original contract. The Debtor complied and claims an additional sum of $1,876.00 for delivery of these panels.

Under Bid Package 60, the Debtor was also required to perform additional work and provide additional materials not contemplated by the contract in four separate and distinct areas. First, the Debtor was required to add additional grout to be poured-in-place concrete upon which the Debtor was to place the precast panels which would perform the stairs. Preparation of the underlying concrete was the responsibility of another contractor who was not associated with the Debtor. The work of that contractor was significantly out of tolerance and, therefore, the Debtor was required to add additional shims and grout. Furthermore, the Debtor required additional time to perform its work due to the failure of the other contractor to prepare the underlying concrete properly. Bid Package 60 contemplated that the Debtor would place shims and then level the shims to provide a level surface for the precast panels which form the stairs and thereafter, the Debtor was to pump grout between the space of the poured-in-place concrete and the underside of the precast stair panels. The contract contemplated that the space would be approximately one inch. However, the actual gap varied between one inch and five inches and, therefore, required significant additional grout and shims.

Although no change order was executed which authorized payment for this additional work, it is clear from the evidence that the City authorized performance of the additional work at the rate of $418.27 per cubic yard of additional grout times the number of cubic yards actually pumped in excess of the original requirement. The Debtor provided approximately 280 cubic yards of additional grout and claims $117,040.00 for this additional work.

The Debtor also performed additional work in order to adapt the stairs to a lighting system which the City chose to install after the manufacture of the precast panels for the stairs, and claims $8,970.00 in connection with this extra work. The Debtor also claims to be entitled to $9,450.00 for drilling certain holes in the steps as an extra charge.

The Debtor's final claim for extra costs pursuant to Bid Package 60 related to "premium time" which the City agreed to reimburse to the Debtor in exchange for an agreement from the Debtor to work overtime to finish the grouting as required for the staircases. This agreement was re-

flected in a letter dated January 4, 1989. (Debtor's Exh. P-451). During the time period in question, the Arena Project was in a crisis mode in an attempt to meet the opening night deadline of January 29, 1989, in order to accommodate a Bill Cosby concert. The Debtor claimed to be entitled to $25,279.64 for the overtime charges which were authorized by the City.

In addition, the Debtor also claims $360,-593.16 for expenses incurred in connection with the project after substantial completion on January 29, 1989.

The Debtor presented the testimony of Mr. Egalite, vice-president of the Debtor, and Mr. Charles, a construction consultant. This claim is related to the clean-up and corrective work which was not caused by the Debtor such as footprints, gum, coke spills, tire marks, etc. It appears that the City chose panels which were light in color which easily stains and discolors. In addition, other contractors continued working on site after substantial completion, performing punch list items and warranty work. The Debtor was required to do additional work which exceeded the punch list work which, of course, was the responsibility of the Debtor. The evidence adduced at trial indicated that the amount which should have been spent by the Debtor to complete punch list items was $100,000.00. The additional sum expended by the Debtor for over-inspection and post-completion work in the amount of $260,593.16 constitutes additional expenses claimed by the Debtor under the contract for additional services performed.

■ The City has counterclaimed and seeks a set-off in the amount of $1,000.00 per day as liquidated damages based on the proposition that the Debtor failed to complete its work by the contractually fixed completion date. The substantial completion date under the contract was September 20, 1988. Although the City contends that the work was not substantially completed until late April 1989, this Court finds that the work performed by the Debtor was substantially completed on January 29, 1989. Based on the foregoing, the City seeks liquidated damages for 131 days, or

$131,000.00 in total. The evidence showed that the construction site became very congested from September 1988 through the substantial completion date of January 29, 1989. Expert testimony indicated that the Debtor and two other contractors were equally responsible for the delays in substantial completion of the project.

■ Whether the liquidated damages provision of the contract is proper, or whether the provision is a penalty is a question of law. When determining whether the provision is a valid liquidated damages clause or is a penalty, the Court must consider whether or not damages which might be experienced from the breach are readily ascertainable at the time of execution of the contract and, secondly, whether the damages which were provided for are reasonable in light of the actual damages suffered. *Hungerford Construction Co., et al v. Florida Citrus Exposition*, 410 F.2d 1229 (5th Cir.1969); *Pembroke v. Caudill*, 160 Fla. 948, 37 So.2d 538 (1948); *Hyman v. Cohen*, 73 So.2d 393 (Fla.1954). In other words, if the $1,000.00 per day liquidated damages charge is not proportionate to the actual damages suffered, the liquidated damages will be construed as a penalty.

■ It is without dispute that the damages which the City would have suffered upon breach of the contract were not readily ascertainable at the time of entering into the contract. Furthermore, in light of the size of the construction contract and the heavy schedule of use which was planned for the Orlando Arena facility, it is also clear that a $1,000.00 per day liquidated damages charge is not unreasonable in relation to the damages that might have been expected. Thus, the provision is a valid liquidated damages provision and is fully enforceable.

■ However, the difficulty lies in determining whether or not the Debtor was responsible for the delay in substantial completion. Based upon the testimony of the various experts, this Court finds that the Debtor was equally responsible, along with two other contractors, for the delay and,

therefore, the Debtor should be responsible for one third of the liquidated damages stipulated in the contract. Accordingly, the City is entitled to set-off against the amounts due to the Debtor in the amount of $43,666.67.

 With respect to the Counterclaim of the City for back charges, the evidence presented by the City at trial did not support any such claim and, therefore, none will be allowed. The final Counterclaim is based upon the City's assertion that the work has never been completed. However, the Debtor established that the City "signed off" on the punch list and that the City's representative agreed that the work was, in fact, completed. While testimony differed as to the date of completion, it is the opinion of this Court that the work was substantially completed on the date of the opening of the Orlando Arena, January 29, 1989, and that the remaining Counts of the Counterclaim of the City are without merit and should be dismissed.

A separate Final Judgment will be entered in accordance with the foregoing.