Argued June 17; reversed July 7; rehearing denied
September 10, 1936

# TOM LEE, Inc., *v.* PACIFIC TELEPHONE & TELEGRAPH COMPANY

(59 P. (2d) 683)

C. O. *Fenlason*, of Portland, for appellant.

*David L. Davies*, of Portland (Carey, Hart, Spencer & McCulloch, of Portland, on the brief), for respondent.

RAND, J. The plaintiff, Tom Lee, Inc., a corporation, brought this action against the Pacific Telephone and Telegraph Company to recover the damage it claims to have sustained because of an alleged error appearing in defendant's Portland telephone directory for April, 1933, and April, 1934. The defendant demurred to the plaintiff's amended complaint on the ground, (1) that it failed to state a cause of action, and (2) that the court had no jurisdiction of the subject matter of the action. The trial court sustained the demurrer upon the last ground, and, upon plaintiff's refusal to plead further, entered judgment for the defendant. From this judgment, the plaintiff has appealed.

In substance, the complaint alleges that in July, 1932, Tom Lee, who later organized the plaintiff corporation, rented certain floor space and established an automobile service and repair shop in a garage operated by one Tom Williams at 1604 S. W. 11th Avenue in the city of Portland, under the name of Tom

Lee Buick Service, and, while there, was a subscriber of the defendant company and was assigned·the telephone number Beacon 1013, although at the time his name was not listed in any telephone directory for the reason that no new directory was issued during that time.

Later, and in February, 1933, Tom Lee moved to 377 Oak street, now 839 S. W. Oak street, and established his shop at that place, doing business first as Tom Lee Auto Service and, after the formation of the plaintiff corporation, as Tom Lee, Inc., Auto Repairs, and, while there, both he and his corporation were subscribers of the defendant company and were assigned the number Beacon 2444; that in April, 1933, and again in April, 1934, the defendant company issued a new telephone directory for the city of Portland in both of which Tom Lee and the plaintiff were properly listed, first as "Lee, Tom, Auto Service, 377 Oak, Beacon 2444", and later as "Lee, Tom, Inc., Auto Repairs, 839 S. W. Oak, Beacon 2444"; that prior to the issuance of each of said directories, the defendant company was informed of the fact that Tom Lee was not operating a shop at 1604 S. W. 11th Avenue and was requested to omit from both of said directories any statement to that effect, and this the defendant promised and agreed to do but failed to comply with said promise and did publish in each of said directories the following words: "Lee, Tom, Buick Service, 1604 S. W. 11th, Beacon 1013"; that, by reason of this double listing, one of which was erroneous, the plaintiff lost business which it would otherwise have obtained to its damage in the sum of $2,900.

The erroneous listing complained of in the complaint is not that the defendant company failed to

properly list the plaintiff corporation as one of defendant's subscribers or to correctly state its name, telephone number and business address, for the complaint admits that that was done, but that, in addition thereto, it erroneously published in its directories, after it had been notified and had agreed not to do so, the individual name of Tom Lee, the principal officer of the plaintiff corporation, and assigned to him a telephone number which he was not using and stated his place of business as at another service station which was then being operated by a competitor of plaintiff, to plaintiff's injury.

■ Defendant's counsel contend that the question of defendant's liability, under the facts alleged in the complaint, involve the question of discrimination and, therefore, that its determination in the first instance was within the exclusive jurisdiction of the Commissioner of Public Utilities of Oregon and that, until a ruling had been made by him thereon, the trial court was without jurisdiction. The learned trial judge in the court below was of the same opinion as shown by the reasons given by him for his decision. We think that this conclusion can not be sustained.

The question involved here is purely a question of law and involves no administrative discretion. It does not involve any rate, rule or practice of the defendant company and no provision of the utility law of this state is cited or can be cited to sustain the ruling. Referring to another section of the utility law of this state, this court said in *Oregon-Washington R. & Nav. Co. v. McColloch,* decided March 17, 1936, and reported in 153 Or. 32 (55 P. (2d) 1133, 1141):

"The language of section 62-126, conferring authority upon the public utilities commissioner to order

reparation and to determine the amount thereof, is limited to those instances in which some administrative function or discretion is involved, and does not include cases in which the court has jurisdiction without prior finding or order by the commissioner as to the reasonableness of any rate, rule, or regulation. The commissioner's jurisdiction is limited. His authority must affirmatively appear from the law creating his office and defining his powers. Northern Pacific Railway v. Public Service Commission, (D. C.) 47 F. (2d) 778."

In that case, the court quoted from *Great Northern Railway v. Merchants' Elevator Company*, 259 U. S. 285 (42 S. Ct. 477, 66 L. Ed. 943), where the same contention was made and, as here, was overruled. There the question was: Could the plaintiff recover from the Great Northern Railway and the Director General a sum of money, alleged to have been exacted in violation of the carrier's tariff, without a preliminary resort to the interstate commerce commission? In holding that such resort to the commission was not necessary, the court, among other things, said:

"Whenever a rate, rule or practice is attacked as unreasonable or as unjustly discriminatory, there must be preliminary resort to the Commission. Sometimes this is required because the function being exercised is in its nature administrative in contradistinction to judicial. But ordinarily the determining factor is not the character of the function, but the character of the controverted question and the nature of the enquiry necessary for its solution. To determine what rate, rule or practice shall be deemed reasonable for the future is a legislative or administrative function. To determine whether a shipper has in the past been wronged by the exaction of an unreasonable or discriminatory rate is a judicial function. Preliminary resort to the Commission is required alike in the two classes of cases. It is required because the enquiry is essen-

tially one of fact and of discretion in technical matters; and uniformity can be secured only if its determination is left to the Commission. Moreover, that determination is reached ordinarily upon voluminous and conflicting evidence, for the adequate appreciation of which acquaintance with many intricate facts of transportation is indispensable; and such acquaintance is commonly to be found only in a body of experts. But what construction shall be given to a railroad tariff presents ordinarily a question of law which does not differ in character from those presented when the construction of any other document is in dispute.''

The court then, after discussing the case of *Texas & Pacific Ry. Co. v. American Tie and Timber Co.*, 234 U. S. 138 (58 L. Ed. 1255, 34 S. Ct. 885), and *Loomis v. Lehigh Valley R. R. Co.*, 240 U. S. 43 (60 L. Ed. 517, 36 S. Ct. 228), distinguished between the facts in those cases and those involved in the case under consideration by saying, as to the first case:

''* * * The only real question in the case was one of fact; and upon this question of fact 'the views of men engaged in the lumber and railroad business as developed in the testimony' were in 'Irreconcilable conflict', p. 146. As that question, unlike one of construction, could not be settled ultimately by this court, preliminary resort to the Commission was necessary to ensure uniformity.''

In discussing the Loomis case, the court said:

''* * * There the question to be decided did not require the consideration of voluminous conflicting evidence; but it involved the exercise of administrative judgment. * * * The controverted question was not how the tariff should be construed, but what character of equipment should be deemed reasonable.''

Then referring to the case under consideration, the court said:

"* * * Here no fact, evidential or ultimate, is in controversy; and there is no occasion for the exercise of administrative discretion. The task to be performed is to determine the meaning of words of the tariff which were used in their ordinary sense and to apply that meaning to the undisputed facts. That operation was solely one of construction; and preliminary resort to the Commission was, therefore, unnecessary."

The court then cited a large number of cases in which the jurisdiction of the court was sustained without preliminary resort to the commission. The question involved was solely one of construction of a tariff, or otherwise a question of law and not one of administrative discretion. The court also cited a number of other cases where the court refused to take jurisdiction because there had not been preliminary resort, the question being either one of fact or calling for the exercise of administrative discretion, saying:

"* * * If in examining the cases referred to, there is borne in mind the distinction above discussed between controversies which involve only questions of law and those which involve issues essentially of fact or call for the exercise of administrative discretion, it will be found that the conflict described does not exist and that the decisions referred to are in harmony also with reason."

That decision, we think, is decisive of the law of this case. Here, there is no question involved except a question of law and there is no call for the exercise of administrative discretion. The question involved here is whether, under the facts alleged in the complaint, which, for the purposes of the demurrer, are admitted to be true, the defendant is liable and the determination of that question presents a question of

law only and does not require, for its determination, the exercise of administrative discretion. The powers of the commissioner of public utilities are limited to those conferred by statute, either expressly or by necessary implication. There is no authority conferred by the statute upon any administrative officer to pass upon the legal question involved here. Obviously, the mere mistake of a telephone company, in listing a particular person in the same directory twice and stating in one of such listings a wrong telephone number and the wrong business address, applying, as in this case, to one person only, does not amount to a wrongful practice or unjust discrimination which the commissioner of public utilities alone has the power to correct.

It can hardly be contended that such a mistake, or others which are liable to occur in the classification of many thousands of subscribers in the telephone directory of a large city such as Portland, amount to either wrongful practice or unjust discrimination. All that could result from such a mistake would be the question of whether the injured party could maintain an action for such damages as might result therefrom, and this raises merely a question of law over which the commissioner of public utilities has no jurisdiction, while, if, as alleged here, the mistake was intentionally or negligently made, the courts alone would have the power to redress the wrong.

We find nothing in the unreported decision of Judge R. S. Bean of the United States District Court for the District of Oregon in *Raymond v. Pacific Telephone and Telegraph Co.*, a copy of which is to be found in defendant's brief in the instant case, that has any application to the question involved here. In

that case, the plaintiff was complaining of what he claimed to be unjust discrimination in the classification of his business as compared to the way other persons engaged in the same or similar business were classified and it was held that, before that question could be determined, a preliminary resort must be had to the public utilities commissioner of Oregon, who alone had authority to determine whether or not it was unjust discrimination.

This leaves for decision the sole question of whether the complaint states a cause of action. This question was not considered or even referred to in the briefs of either party and we have found but one case where the cause of action was based upon a duplicate listing in a telephone directory of a subscriber, one of which listings was incorrect. That case will be later referred to.

*McLeod v. Pacific Telephone Co.,* 52 Or. 22 (94 P. 568, 95 P. 1009, 15 L. R. A. (N. S.) 810, 18 L. R. A. (N. S.) 954, 16 Ann. Cas. 1239), was an action to recover damages for defendant's failure to notify the plaintiff that she was wanted at one of defendant's offices to answer a long distance call. On rehearing, the court through Mr. Justice EAKIN, after pointing out that the liabilities of telephone companies are similar to the duties and liabilities of telegraph companies and that, in the great majority of cases, the addressee of a message can not rely upon any contractual relation, then said:

"* * * The basis of his right is *ex delicto* namely, that the company, in the exercise of a public franchise, and in the performance of duties of a public character incident thereto, is liable to the public for the performance of those duties with reasonable care and diligence; and in such a case the company is re-

sponsible to the addressee for negligence in the transmission and delivery of a message it has contracted to deliver to him."

The opinion then points out that the liability, being *ex delicto*, may extend to any one who is injured by the negligence of the company, and, therefore, there may be a liability to different individuals for the same tort, and disposed of the case by saying:

"* * * We think the conclusion is unavoidable that the telephone company is liable to the addressee or person called to the phone by a patron, for any negligence in the transmission and delivery of a message or call, when the company had notice from the message or otherwise at the time of the transmission that such addressee had an interest therein, and such liability is not contractual, but in tort; and that being the ground of the liability, it is not necessary that the addressee be the primary beneficiary in the message, but it extends to the addressee if he has any interest. * * * But where the company contracts to produce at its own office a certain individual to answer a long distance or any call, as in this case, it is bound to exercise reasonable care to produce the proper person, and is liable to such person for negligence in that regard, if it had notice of his interest."

While the analogy between that case and this is very slight, it has some bearing on some of the questions involved in this case. See also *Frazier v. Western Union Tel. Co.*, 45 Or. 414 (78 P. 330, 67 L. R. A. 319, 2 Ann. Cas. 396), and *Edd v. Western Union Tel. Co.*, 127 Or. 500 (272 P. 895), where the same or similar questions were considered and in both of which the action was brought by the addressee to recover damages for failure of the telegraph company to deliver the message. In the last case cited, the court said:

"If brought by the sender, it is an action *ex contractu;* if commenced by the addressee, it is an action

*ex delicto.* As a general rule the measure of recovery for breach of contract is more restricted than where the action sounds in tort. However, whether in the instant case the action be *ex contractu* or *ex delicto,* we take it that the damages must be the proximate result of the wrongful act of the defendant.''

In the instant case, the plaintiff bases its right to recover upon a contract which it is alleged the defendant entered into with Tom Lee as an officer of the plaintiff corporation, and it is alleged in the complaint that the defendant company was grossly negligent when it inserted in its directory the name of Tom Lee and stated his address and telephone number erroneously.

The evident purpose of alleging gross negligence was to take the case out of the rule stated in *Hamilton Employment Service, Inc., v. New York Telephone Co.,* 253 N. Y. 468 (171 N. E. 710), that:

''*  *  * in the absence of an allegation of gross negligence or wilful misconduct, nothing worse will be inferred than ordinary negligence such as some unaccountable mistake by an employee who could not be entirely controlled by any regulation however stringent.''

In the same case, the court said:

''*  *  * Telephone companies are, no more than telegraph companies, insurers, but they are bound to exercise adequate diligence.  *  *  *

''*  *  * In the crowding and rush of preparing a volume containing hundreds of thousands of names and numbers, complete freedom from error is practically impossible.''

and further:

''*  *  * The preparation and delivery of a directory is not a primary part of the business of a

telephone company. It is wholly subordinate to the main transaction of transmitting messages. A directory may be compared to a railroad time table. Courts do not hold a carrier to the same degree of liability for mistakes in time tables as for negligence in operation of trains.''

There are numerous cases which hold that when a telephone company contracts to furnish telephone service, it impliedly agrees to place the subscriber's name and telephone number in its directory and that its failure to do so constitutes a breach of contract for which it is liable. Among the cases so holding, see *Masterson v. Chesapeake & Potomac Tel. Co.*, 299 F. 890, where the court said:

"We understand the law to be, under the circumstances shown by the evidence here, that, if the plaintiff was a subscriber to and for defendant's service, he was entitled to have his name in and to be furnished with directories containing his name and the number of his telephone, properly arranged. Jones on Telephone Companies, section 246, and cases cited. * * *

" 'A telephone company is a public servant, and as such is required to furnish reasonable telephone facilities to those who desire them and comply with its lawful requirements. Of course, it may for just cause refuse service, but until such cause appears it refuses or neglects so to do at its peril', citing authorities. 'It matters not, for the purposes of this decision, whether the defendant be regarded as being under a contract with the plaintiff, implied from the circumstances, to list plaintiff's name in its June, 1919, directory, which contract it has breached to the damage of the plaintiff, or as having, without legal excuse therefor, failed to perform the duty which as a public servant it owed to the plaintiff, both of which questions are discussed in the briefs. The recited evidence tends to establish one or both of these conclusions and that

the plaintiff was damaged thereby. Therefore the court erred in holding that there was nothing to submit to the jury.' "

See, also, the dissenting opinion in *Schwanke, Inc., v. Wisconsin Telephone Co.,* 199 Wis. 552 (227 N. W. 30, 68 A. L. R. 1320), and *Baldwin v. Chesapeake & Potomac Telephone Co.,* 156 Md. 522 (144 Atl. 703). In the case last cited, the plaintiff brought suit to restrain the distribution of a telephone directory because the defendant company had inserted therein the name of plaintiff's former firm in spite of directions not to do so, it having been dissolved. The bill was dismissed because a new directory had been issued correcting the error. An appeal from such dismissal was taken and it was affirmed. In disposing of the case, the court said:

"* * * if an actionable wrong has been committed by defendant resulting in injury to plaintiff, there is an adequate remedy at law, and a court of equity should not retain jurisdiction for the sole purpose of trying a damage suit."

It is clear that whatever damage, if any, the plaintiff sustained by reason of the insertion of the name of Tom Lee, its principal officer, and making it appear that he was doing business at a different place, the damages must be limited to those sustained by the plaintiff corporation without any reference to the question of whether Tom Lee himself sustained any individual damage. Whether the plaintiff can show, upon trial, that it has sustained any actual damage by reason of the mistake complained of is a matter of future determination, but the rule is well established that nominal damages may be recovered for the bare infringement of a right unaccompanied by any actual

damage: 1 Sedgwick on Damages (9th Ed.) section 98, and cases cited.

We think that the facts stated in the complaint are sufficient to entitle the plaintiff to at least nominal damages and, therefore, that the complaint states a cause of action, and that the demurrer was improperly sustained. Judgment, therefore, will be reversed and the cause remanded for such further proceedings as are not inconsistent herewith.

CAMPBELL, C. J., and BEAN and BAILEY, JJ., concur.