WALDEN, Judge
(dissenting).
Upon defendant’s motion the trial court dismissed Count I of plaintiff’s Amended Complaint because of its failure to state a cause of action. The case of Pembroke v. *183 Caudill, 1948, 160 Fla. 948, 37 So.2d 538[1] was cited as the basis for the dismissal and judgment was entered thereupon for the defendants. A majority of this Court has approved this manner of disposition.
The simple issue then and now is: “Does Count I of the Amended Complaint state a cause of action?” Being satisfied beyond all doubt that it was legally sufficient, I must dissent and say that I would reverse the trial court decision and remand with instructions to reinstate the complaint.
It goes without saying, or should, that in considering such challenge to the sufficiency of the complaint all of plaintiffs’ well-pleaded allegations are to be taken as admitted and true, and the Court’s gaze is limited to the four corners of the complaint. And if a complaint states any grounds for relief it should not be dismissed.
Let us look at the offending document, plaintiffs’ First Amended Complaint,[2] *184 which was deemed to be fatally defective. It appears from it that plaintiffs agreed to sell and defendants agreed to purchase real estate pursuant to the terms of a written contract. The sales price was $125,000.00. $10,000.00, or 8% of the sales price, was deposited by the defendants as earnest money with an escrow agent.
Plaintiffs alleged full performance on their part.
Plaintiffs alleged two breaches of the contract by the defendants. Defendants failed and refused to complete the purchase of the property as they agreed to do. Defendants wrongfully obtained the return of their earnest money deposit from the escrow agent contrary to the terms of the sales contract.
It is clear and undisputed that the suit is for damages for breach of contract and in their ad damnum clause plaintiffs demanded judgment against the defendants in the sum of $10,000.00, together with interest and costs.
According to this writer’s understanding, this complaint clearly and abundantly states a cause of action. But what is the position of the majority whereby it agrees that plaintiffs have failed to state a cause of action? Hoping to be accurate and in context, the majority believes that paragraph 7 of plaintiffs’ Count One in the amended complaint, “That Plaintiffs elect to retain the deposit heretofore paid by the Buyer.”, was an improper element of damage and that the contract terms dictated that the deposit was a penalty and not liquidated damages. As such, the agreement was illegal and unenforceable. The gravamen of their opinion is, I believe, this statement, “The trial court, following the guidelines set forth in Pembroke v. Caudill, supra, simply held (at least inferentially) that the contract provided for a penalty rather than liquidated damages. We believe this was a correct determination. Under such circumstances, the vendors are confined to their actual damages. Since none were alleged, the court correctly dismissed the amended complaint * * * ”
With this backdrop, there are several points that merit discussion.
First, if it be assumed that the deposit was a penalty and not liquidated damages —a position I in no way concede — the majority opinion goes on to correctly reflect that plaintiffs are entitled to recover their actual damages. With this, the claim for special damages contained in paragraph 7 *185 of the complaint, supra, should have been simply deleted upon motion to strike or by the court sua sponte. If it be so blotted out, then the complaint still must be entertained and must not be dismissed because, at the least, plaintiffs are entitled to nominal damages. Where there has been, as here, a breach of duty or an invasion of legal rights, the claimants are still entitled to receive nominal damages even if there has been no material loss to plaintiffs.[3]
More importantly, the complaint adequately and sufficiently affords a basis for general damages. General damages are those which are the direct, natural and necessary result of the wrongful act of omission.[4] When resulting from a breach of contract such damages are presumed to have been contemplated by the parties.[5] Such general damages do not have to be specially or particularly plead, but may be recovered under a general allegation of damages,[6] such general allegation being found in the instant complaint.
In Augustine v. Southern Bell Telephone & Tel. Co., Fla.1956, 91 So.2d 320, a complaint was dismissed because it failed to specify with particularity the special damages claimed by plaintiff. It was a suit for breach of an oral contract. Justice Thornal stated the problem as follows:
“In Tom Lee, Inc. v. Pacific Telephone & Telegraph Co., 154 Or. 272, 59 P.2d 683, it was held that a complaint by a customer against a telephone company for an erroneous listing in a telephone directory was sufficient against a demurrer if it set forth a basis for the recovery of nominal damages even though the complaint failed to allege adequately the basis for recovery of so-called special damages. Special damages are considered to be the natural but not the necessary result of an alleged wrong or breach of contract. In other words, they are such damages as do not follow by implication of law merely upon proof of the breach. On the other hand, general damages are those which the law presumes actually and necessarily result from the alleged breach or wrong. Erick Bowman Remedy Co. v. Jensen Salsbery Lab., 8 Cir., 17 F.2d 255, 52 A.L.R. 1187; Atlanta & St. A. B. Ry. Co. v. Thomas, 60 Fla. 412, 53 So. 510; 9 Fla.Jur. 458, Damages, Sec. 126.”
and
“Applying these rules to the situation before us we are of the view that if the complaint states a claim upon which at least nominal damages may be awarded, then a motion to dismiss such a complaint should not be sustained. If the claims for damages are inadequate or indefinite and it is the desire of the defendant to have a more specific allegation, he can obtain the desired relief by a motion for a more definite statement. If, as here, claim for special damages is sufficient to notify the defendant of the nature of the special damages claimed, the complaint if otherwise sufficient should be sustained against a motion to dismiss. Under our liberal rules of pleading, the defendant is at liberty to obtain specific details, either by interrogatories or by pre-trial deposition if he does not elect to obtain a more definite statement. If the depositions reveal a maximum potential recovery below the jurisdictional limits of the trial court, then other appropriate pro *186 cedural remedies are available to the defendant.”
In sum then, as concerns this point it is submitted that the pleading is adequate to withstand the motion and provide plaintiffs with an opportunity to prove general damages, and certainly it is adequate to form the basis for an award of nominal damages.
For a second consideration, the trial court determined solely from an examination of the complaint that the deposit was a penalty and not allowable liquidated damages. It is submitted that this decision was grossly premature and simply could not be made if plaintiffs’ allegations are correctly taken as true.
The line of demarcation between a penalty and liquidated damages is not rigid and there is no fixed or general rule to determine the question — each case must be governed by its own facts and circumstances.[7] There are a number of factors or criteria to be used in deciding the question, such as the nature or character of the contract, the terms and purposes of the whole instrument, the circumstances surrounding its execution, the natural and ordinary consequences of its breach, the intention of the parties, the certainty or uncertainty of damages and the peculiar circumstances attending each case, and whether the sum stipulated to be forfeited is grossly disproportionate to damages that might reasonably be expected to follow from the default. Also to be considered is the fact that the parties know exactly their own situation and are in a better position than anyone else to appreciate and make provision for the consequences of a failure to complete the contracts.[8] Since Count One was silent as to these criteria, it is difficult to understand how a court could plumb and apply them without giving plaintiffs an opportunity to support their complaint with proofs.
For cases that hopefully shed light upon the proposition with which we are faced, in the case of Hyman v. Cohen, Fla.1954, 73 So.2d 393, there was a breach of a lease agreement and the question arose as to whether the stipulated sum constituted liquidated damages or a penalty was present. There was a full trial of the issue and there the court considered the intention of the parties, whether the damages were readily ascertainable and whether the sum stipulated was grossly disproportionate. It was finally stated,
“And to hold that a provision for the forfeiture of a security deposit (if the capital contribution is in that form) upon the premature termination of the lease is presumptively a penalty is not only unrealistic — in our opinion, it does violence to the intent of the parties. We think the true rule is as stated by Underhill, quoted above: ‘the sum thus to be retained is presumptively liquidated damages and not a penalty.’ ”
In the case of Lewis v. Belknap, Fla.1957, 96 So.2d 212, a real estate sales contract with a purchaser’s default clause was in issue. It was there held,
“The sellers and the broker in notifying the purchaser of the division of the sum deposited between themselves relieved the purchaser from further liability under the contract in accordance with the express understanding of the parties. It was the obvious intention of all concerned that if the sellers and the broker so elected, they were entitled to dispose of the matter upon a complete breach of the contract as we have held there was in this case. These were mature people dealing with each other at arms length and we hold that under the circumstances of this case and the conditions under which the sum was deposited, that such amount when accepted by the sellers and broker is presumptively liqui *187 dated damages and not a penalty and we reaffirm conclusions reached in Hyman v. Cohen, supra, in this respect and apply it to executory contracts for the purchase of real estate.”
To like effect is Stuco Corp. v. Gates, Fla.App.1962, 145 So.2d 527. See also McAllister Enterprises, Inc. v. McAllister Hotel, Inc., Fla.App.1969, 219 So.2d 114; O’Neill v. Broadview, Inc., Fla.App.1959, 112 So.2d 280; Baroudi v. Hales, Fla.App.1957, 98 So.2d 515.
As a third approach it may be observed that liquidated damages provisions are a necessary and needed adjunct to our commercial system, particularly in the field of real estate conveyancing. They contribute much to the solemnity and performance of real estate sales agreements where there is customarily a substantial time lag between the striking of the bargain and the closing. During this interim the subject land is necessarily taken off the market and held in limbo to the seller’s disadvantage. The earnest money or binder, traditional in Florida real estate sales practices, which the prospective purchaser deposits as liquidated damages in case of his default serves to balance the transaction and guarantee his seriousness of purpose.
It is to be remembered that in the instant case the parties contracted at arms length in no uncertain terms and there was no intimation of fraud or overreaching on the part of the vendors. There was no suggestion of misfortune befalling the vendees so as to excuse their performance or so as to shock the court’s conscience in permitting the vendors to obtain the deposit.[9] The vendees are in unexcused, unexplained and flagrant breach of their contract. Thus, it is a strange and unpalatable circumstance to note their preference over the blameless vendors and without even permitting the vendors to gain a foothold in the court and produce proofs to develop their entitlement to the deposit.
If Pembroke v. Caudill, 1938, 160 Fla. 948, 37 So.2d 538, outlaws the instant contract with innocuous and innocent provisions, then indeed the standard and long accustomed methods of selling real estate in Florida via deposit receipt contracts have been dealt a body blow. It would not be an overstatement to say that the procedure where the purchaser puts up a binder or earnest money deposit has become a meaningless gesture.
If this writer were required to make a decision based solely upon the terms of plaintiffs’ complaint, it would be my emphatic opinion that the contract provided for proper liquidated damages. Here the sellers held the land off the market pending closing for approximately six to seven months (in Pembroke, supra, the period was five days). Because of the length of time and the fact that the land was off the market the 8% deposit is quite reasonable in my judgment. Further, the complaint specifically provides that the sum to be given to the vendors upon defendant’s breach “as consideration for his execution of this agreement and in full settlement of any claims for any damages.” There is nothing in the record that I can discover which would negate the propriety, accuracy, legality and applicability of this covenant and it would seem, as a matter of orderly process and basic fairness, that if vendees wish to avoid the clear wording of their contract, they should be required at the least to allege and prove that the sum was a penalty.
The notion that the vendor is adequately protected by his right to file suit against the defaulting vendees and prove his actual damages is illusionary and not in accord with the realities of real estate practice. All know that there has been a great influx of people into Florida, with many sales and transfers of realty resulting. Under present practices brokers can introduce strangers as prospective vendees and the seller could bargain as to the sufficiency of the *188 deposit as a matter of liquidated damages against the possibility that the stranger vendee would default. In turn, the vendee could be impressed with his own seriousness when he put up the binder and safe in the knowledge that the vendor had bound himself by putting his land on the line and making it subject to specific performance. And the background, bona fides, financial worth and character of the parties became thereby a matter of relative indifference and permitted contracting adults to make speedy decisions and for land sales to be effectuated with a minimum of preliminaries and frivolous defaults. If deposit receipt contracts are outlawed, vendors would contract at their peril. For safety they would necessarily have to make credit checks and seek references as concerns the vendee and perhaps require that he post a performance bond (I fail to see any real distinction between a bond and a security deposit). Otherwise the vendor would have to take his chances that if the vendee defaulted he could obtain service of process upon him and that the vendee would not be judgment proof. Further, most sellers do not wish to become involved in a law suit because of its uncertainties, expenses and the time involved.
With reference to Pembroke v. Caudill, supra, its terms cannot be precisely reconciled and with all respect this writer can only believe that while the principles announced are certainly correct, same are not to be literally applied as attested by the cases that have since followed. Probably the present state of law is reflected in an excerpt from 22 Am.Jur.2d, § 214,
“Early opinions stated that as a general rule, courts tend to regard stipulations in contracts purporting to fix sums to be paid in the event of breach as penalties rather than as liquidated damages. While a reading of the cases indicates that the courts were less than liberal in enforcing stipulated sums, it is doubtful that there is any longer sufficient authority to support a rule that the courts tend to regard such provisions as penalties. In fact, some courts have given expression to the opposite rule and have said that the modern tendency is to look upon stipulated sums with candor, if not with favor. No matter which tendency is stated as the rule, there are so many cases serving as exceptions that the rule becomes meaningless to the point of being no rule. The present posture of the cases permits the conclusion that while courts were reluctant to enforce a provision which attempted to stipulate damages, they have now formulated a rule which distinguishes penalties from liquidated damages, and enforce these stipulated sums which are determined to be liquidated damages.”
For all of these reasons I do respectfully dissent.

. The Supreme Court of Florida held that a certain deposit of earnest money was a penalty and, as such, affirmed the defendant’s demurrer.

. A. Omitting heading and formal parts, Count One of plaintiffs’ Amended Complaint provided:
“COUNT ONE
“1. This is an action for damages in the amount of $10,000.00
“2. That the Plaintiffs are residents of DeSoto County, Florida.
“3. That defendants, C. E. TOMPKINS and DOUGLAS MAC TOMPKINS are former residents of Brevard County, Florida, and now reside in Seminole County.
“4. That on or about May 12, 1967, Plaintiffs and Defendants C. E. TOMPKINS and DOUGLAS MAC TOMPKINS entered into a contract for sale and purchase of real estate located in Brevard County, Florida. A true copy of which is attached to the original complaint and incorporated herein by reference as Plaintiffs Exhibit ‘A’ wherein Plaintiffs are Sellers and Defendants C. E. TOMPKINS and DOUGLAS MAC TOMPKINS are Buyers. The transaction was negotiated in Brevard County, Florida by the defendants C. E. TOMPKINS through the real estate brokerage offices of Cocoa Realty Investment Corporation, Roy J. Amos, president, whose principal and only place of business is located in Cocoa, Bre-vard County, Florida. The closing of the transaction was to take place in Brevard County, Florida.
“5. That the Plaintiffs have at all times, done and performed all of the stipulations, conditions, and agreements stated in said contract to be performed on their part at the time and in the manner therein specified and were at all times ready, willing and able to consummate the transaction. That the defendants have failed to fulfill the terms and conditions of said contract on their part to be performed, in that they have without cause failed and refused to complete the purchase of the subject property as contemplated in said contract.
“6. That paragraph 3 under ‘additional provisions of contract’, in said contract attached hereto as Plaintiffs Exhibit ‘A’ provided as follows:
‘Default by Buyer — If Buyer fails to perform this contract within the time specified, the deposit this day paid by the Buyer as aforesaid, may be retained by or for the account of Seller as consideration for the execution of this Agreement, and in full settlement of any claims for damages and all parties shall be relieved of all obligations under this contract or Seller at his option, may proceed at law or in equity to enforce his legal rights under this contract.’
“7. That Plaintiffs elect to retain the deposit heretofore paid by Buyer.
“8. That aforesaid $10,000.00 was duly deposited by defendants C. E. TOMPKINS and DOUGLAS MAO TOMPKINS with Defendant FLORIDA ESCROW CORPORATION, as is shown by Plaintiffs Exhibit ‘A’, but that defendants C. E. TOMPKINS and DOUGLAS MAC TOMPKINS requested and received the return of said deposit from the Florida Escrow Corporation and in violation of its escrow agreement and contrary to said contract.
“WHEREFORE, Plaintiffs sue and demand judgment against all of the defendants in the sum of $10,000.00 together with interest and the cost of this suit.”
B. Extracts of the relevant portions of the real estate sales contract which was attached to the complaint are as follows :
“ * * * The total purchase price is $125,000.00, payable as follows: (a) A deposit of $10,000.00 paid to Florida Escrow Corporation, receipt of which is hereby acknowledged * * *.
*184 “Abstract and Examination: Within 30 days from the date of this contract, the seller shall deliver to the buyer or his attorney an acceptable abstract showing marketable title in the seller. The Buyer’s attorney shall have not less than 90 days but not more than 180 days from the date of delivery to examine said abstract. If the title is unmarketable, the buyer or his attorney shall so notify the seller or his attorney or agent in writing specifying the defects and the seller shall have 120 days from the receipt of such notice to cure said defects. If the title is marketable, or is perfected, this transaction shall be closed within 5 days after elapse of said time limited for examination or perfection of title * * *.
“Default of Buyer: If buyer fails to perform this contract within the time specified, the deposit this day paid by the buyer, as aforesaid may be retained by or for the account of seller as consideration for the execution of this agreement and in full settlement of any claims for damages, and all parties shall be relieved of all obligations under this contract or seller, at his option, may proceed at law or in equity to enforce his legal rights under this contract * * *. “Time: It is specifically agreed that time is of the essence of this contract * * *'
“Escrow of Deposit: The party receiving the deposit agrees to hold it in escrow and to disburse it in accordance with the terms and conditions of this contract.”
O. The contract form was approved and copyrighted by the Brevard County Bar Association. It may be fairly noted as a matter of common knowledge that such contracts are in standard use throughout the state and that the usual deposit of earnest money is 10% of the purchase price.

. Fain v. Cartwright, 1938, 132 Fla. 855, 182 So. 302; Cason v. Baskin, 1947, 159 Fla. 31, 30 So.2d 635.

. Benedict Pineapple Co. v. Atlantic Coast Line Ry. Co., 1908, 55 Fla. 514, 46 So. 732, 20 L.R.A.,N.S., 92; Moses v. Autuono, 1908, 56 Fla. 499, 47 So. 925, 20 L.R.A.,N.S., 350.

. Atlanta & St. A. B. Ry. Co. v. Thomas, 1910, 60 Fla. 412, 53 So. 510.

. Camp v. First Nat. Bank, 1902, 44 Fla. 497, 33 So. 241, 103 Am.St.Rep. 173; Benedict Pineapple Co. v. Atlantic Coast Line Ry. Co., 1908, 55 Fla. 514, 46 So. 732, 20 L.R.A.,N.S., 92; Moses v. Autuono, 1908, 56 Fla. 499, 47 So. 925, 20 L.R.A.,N.S., 350; Warfield v. Hepburn, 1912, 62 Fla. 409, 418, 57 So. 618; Seaboard Air Line Ry. Co. v. Hess, 1917, 73 Fla. 494, 74 So. 500.

. Smith v. Newell, 1896, 37 Fla. 147, 20 So. 249; Pembroke v. Caudill, 1948, 160 Fla. 948, 37 So.2d 538, 6 A.L.R.2d 1395.

. See 9 Fla.Jur., Damages, § 103 et seq.; 22 Am.Jur.2d, Damages, § 214 et seq.

. See Beatty v. Flannery, Fla.1950, 49 So.2d 81.