464 F.2d 267
 CHANDLER LEASING DIVISION, PEPSICO SERVICE INDUSTRIES
LEASING CORPORATION, Plaintiff-Appellant-Cross-Appellee,
v.
FLORIDA-VANDERBILT DEVELOPMENT CORPORATION, formerly known
as Florida Realty Co., and Harold J. Baker,
individually,
Defendants-Appellees-Cross-Appellants.
 No. 72-1383 Summary Calendar.*
 United States Court of Appeals,
 Fifth Circuit.
 July 18, 1972.
Rehearing Denied Aug. 22, 1972.
 
 John L. Britton, Miami, Fla., for plaintiff-appellant-cross-appellee.
 William E. Sadowski, Thomas B. DeWolf, Miami, Fla., for defendants-appellees-cross-appellants.
 Before BELL, DYER and CLARK, Circuit Judges.
 CLARK, Circuit Judge:
 
 
 1
 This appeal by plaintiff, Chandler Leasing Division of Pepsico Service Industries Leasing Corporation (Chandler), and cross-appeal by defendant, Florida-Vanderbilt Development Corporation (Florida-Vanderbilt), involves the validity of the defense of breach of warranty of seaworthiness and the proper measure of damages for an admitted breach of a written lease agreement covering a 55 foot yacht. The facts are not in dispute, but the admiralty and Florida legal conclusions to be derived therefrom are contested.
 
 
 2
 On January 23, 1970, Chandler leased to Florida-Vanderbilt a 1970 Chris Craft Cruiser for a nine-year term. On September 1, Florida-Vanderbilt ceased remitting payments and on October 30 wrote to Chandler terminating the lease because of acute electrolysis problems. Pursuant to a judgment of replevin issued by a Florida state court, Chandler repossessed the vessel on February 11, 1971, proceeded to hold a public sale of the vessel (which is not attacked procedurally) and purchased the vessel at that sale for 100,000 dollars.
 
 
 3
 Chandler filed this suit seeking a recovery of damages in accordance with the provisions of the lease contract which essentially consisted of the discounted value of all future rent payments less the purchase price of 100,000 dollars. Florida-Vanderbilt defended by claiming a breach of the warranty of seaworthiness. The district court refused to recognize the seaworthiness defense but entered summary judgment which limited Chandler's recovery to the accrued rental in default as of February 11.
 
 
 4
 Florida-Vanderbilt cross-appeals from the district court's disallowance of its affirmative defense that Chandler breached its warranty of seaworthiness. Florida-Vanderbilt argues that a warranty of seaworthiness attached to the lease agreement despite the existence of a general, but universal, disclaimer clause.[1] It contends that the disclaimer in order to be efficacious against a warranty of seaworthiness, must specifically state that the warranty is abjured. The facts in the case at bar make this defense wholly inapplicable. Chandler was not a boat owner offering to lease a vessel. The lease makes it transparently clear that Florida-Vanderbilt chose the exact yacht and equipment it wanted and even selected the boat company from which it wanted the yacht to be acquired. The very first term of the lease provided:
 
 
 5
 "EQUIPMENT; ACCEPTANCE. Lessee hereby leases from lessor, and lessor leaves to lessee, the personal property described above and in any schedule made a part hereof by the parties hereto (herein called 'equipment'). Lessee has chosen and requested equipment of the type and quantity specified herein and has selected the supplier named above. Lessor agrees to order such equipment from said supplier, but shall not be liable in any event for specific performance of this lease or for damages of any type, if, with or without excuse, the supplier delays or fails to fill the order or delivery of the equipment is otherwise delayed or not made. Any delay in such delivery shall not affect the validity of this lease. Lessee shall accept such equipment if delivered in good repair, and hereby authorizes lessor to insert herein the serial number of each item of equipment so delivered. Unless lessee gives lessor written notice of each defect or other proper objection to any item of equipment within five (5) business days after receipt thereof, it shall be conclusively presumed, as between lessee and lessor, that the item was delivered in good repair and that lessee accepts it as an item of equipment described herein."
 
 
 6
 No principle of the maritime doctrine of warranty of seaworthiness, which applies to demise charters and related vessel leases, proscribes Chandler from contracting with Florida-Vanderbilt that a part of the consideration for the lease of a vessel Florida-Vanderbilt selected and caused Chandler to purchase should include a waiver of any warranty from Chandler. In substance, Chandler was not a demise charterer but rather was a financing agent. Under the facts here, the general disclaimer clause effectively remitted any claim arising from the leased vessel's physical condition to such claim as could be exerted against the manufacturer's warranties. The district court correctly struck the affirmative defense of breach of warranty of seaworthiness.
 
 
 7
 Florida-Vanderbilt attempts to also cast its defense in a failure of consideration mold. We similarly reject this attempt to reach the same result via a substitute route. The leased vessel it picked out was accepted and used, and rentals were remitted for many months. The obligations of the lease were fully assumed and cannot be negated in derogation of the document's plain terms.
 
 
 8
 Chandler argues that according to Subsection (A) of Section 14 of the lease agreement[2] it is entitled to: (i) 15% of the actual cost of the vessel, + (ii) the balance of the rent for the unexpired term of the lease from the date of termination minus the 100,000 dollars received from the sale, both adjusted by the required discounts or added interest, + (iii) expenses and attorneys' fees. Florida-Vanderbilt relies upon Cutler Gate Building Corp. v. United States Leasing Corp., 165 So.2d 207 (Fla.Dist.Ct. of Appeal, 3d Dist. 1964); Monsalvatge & Co. of Miami v. Ryder Leasing, Inc., 151 So.2d 453 (Fla.Dist.Ct. of Appeal, 3d Dist. 1963) to uphold the district court's judgment that such recovery would be inequitable and unjust.
 
 
 9
 Except for one particular-the requirement of an arbitrary payment of 15% of actual cost-the provisions of the present lease are distinguishable from Cutler Gate and Monsalvatge. The contractual clauses involved in both of those cases provided for damage in the amount of the unaccrued rents for the remainder of the lease term and in addition, the lessor was allowed the use and benefit of the leased property. The Florida courts held that it would be unjust and inequitable to allow the lessor this much compensation because in effect the lessor was afforded a double remedy. See also Geiger Mutual Agency, Inc. v. Wright, 233 So.2d 444 (Fla.Dist.Ct. of Appeal, 4th Dist. 1970). Instead, the recovery was limited to the rentals in default at the time of the termination of the lease.
 
 
 10
 These cases cannot be interpreted to lay down the per se rule that irrespective of whatever contractual damage provision the parties may have agreed upon, only rentals in default could be recovered. Such a rule would not only conflict with the right of contracting parties to obligate themselves as they wish, but it would also be inconsonant with sound reason. Under so absolute a rule, lessees could breach lease agreements with impunity knowing that they would be liable only for the payments in default, and lessors on the other hand would never know when the property would be returned and in what condition. Such intolerable conditions would so seriously impair the commercial viability and efficacy of lease transactions that they would forestall or inhibit the negotiation of commercially valuable lease agreements.
 
 
 11
 However, the absolute requirement of Section 14 that a defaulting lessee pay 15% of the actual cost of the equipment leased can, in the context of the other damage covenants, only amount to an unenforceable attempt to contract for a penalty in excess of actual damages. It is not a liquidated damage clause. The damages were certainly capable of accurate estimation, if by no other means, then by the contractual process of selling the property let, applying sale proceeds to reduce the anticipated rental income and providing for the reimbursement of all retaking and selling expense. The percentage remained inflexible throughout the years of the lease and in no part served as a reasonable forecast of just compensation, which is the hallmark for legal damages under Florida law. Pembroke v. Caudill, 160 Fla. 948, 37 So.2d 538, 6 A.L.R.2d 1395 (1948); Hungerford Const. Co. v. Florida Citrus Exposition, 410 F.2d 1229 (5 Cir.), cert. denied 396 U.S. 928, 90 S.Ct. 263, 24 L.Ed.2d 226 (1969); 1 Restatement of Contracts Sec. 339(1) (1932). For example, consider how unconscionable such a flat exaction would be in the latter months of the lease.
 
 
 12
 Florida follows the universal rule that parties sui juris may negotiate any contract not violative of law or public policy. See e. g., International Ass'n of Machinists v. State ex rel. Watson, 153 Fla. 672, 15 So.2d 485 (en banc 1943); Troup v. Meyer, 116 So.2d 467 (Fla.Dist.Ct. of Appeal, 3d Dist. 1959); 17 C.J.S. Contracts Sec. 1(2) (1963). Except for the flat 15% of cost proviso, the present contractual method of damage calculation is not violative of any law or public policy. It does not provide for a double recovery as did the contracts in Cutler Gate and Monsalvatge. With the 15% penalty deleted, it is a reasonable damage provision that competent contracting parties were completely free to negotiate about and accept or reject.
 
 
 13
 We recognize that under the Florida case law there are three remedies available to lessors when their lessees breach a lease agreement.[3] However, these remedies are not established as the sole remedies which may be provided for lease breaches, but are intended to supply remedies when none are provided in the lease or when broader contractual lease remedies violate public policy. Since we conclude that without the 15% penalty Section 14 neither provides the lessor with a double remedy nor violates any announced public policy of the State of Florida, it is controlling on the question of damages. Therefore the district court erred in refusing to apply the remedy of that subsection to the breach admitted here.
 
 
 14
 Under Section 14 the termination date is crucial to the computation of damages. We construe that date to be February 11, 1971, the date the lessor first took an affirmative act indicating its choice of remedies under the provisions of the contract.
 
 
 15
 In view of our disposition of this case, we pretermit discussion on Florida-Vanderbilt's final point. The cause is remanded to the district court for a calculation of damages due Chandler under Section 14.
 
 
 16
 Affirmed in part, reversed in part, and remanded with directions.
 
 
 
 *
 Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of N.Y., 431 F.2d 409, Part I (5th Cir. 1970)
 
 
 [1]
 "3: WARRANTY. Lessor, without assuming responsibility for compliance by supplier, will request the supplier to authorize lessee to enforce in lessee's own name all warranties, agreements, or representations, if any, which may be made by the supplier to lessee (or lessor). LESSOR ITSELF MAKES NO EXPRESSED OR IMPLIED WARRANTIES OR REPRESENTATIONS AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATIONS, THE CONDITION OF EQUIPMENT, ITS MERCHANTABILITY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE. In no event shall any defect in or unfitness of the equipment relieve lessee of the oblitigation hereunder, once the item has been accepted, or presumed accepted under Paragraph 1 hereof, by lessee."
 
 
 [2]
 14. DEFAULT. If lessee, fails to pay any rent or other amount herein provided within ten (10) days after the same is due and payable. . . . lessor at its option may from time to time sue, at law or in equity, to enforce performance of this lease or to recover damages for breach thereof, or, may by notice in writing to the lessee terminate this lease as to any or all items of equipment; . . . . In the event of such notice of termination from the lessor, this lease shall terminate in accordance therewith as to the equipment specified ("terminated equipment") but the lessee shall nevertheless remain liable for all rents therefor and additional sums thereon accrued and unpaid at the time of termination and additionally shall be liable to lessor as hereinafter provided. In such event lessee shall remain liable for the return of the terminated equipment to lessor, as provided in paragraph 7 hereof, but lessor may take possession of any or all of said equipment, wherever it may be located without demand or notice, without any court order of process of law, and without incurring any liability to lessee for any damages occasioned by such taking of possession. Lessor shall make such efforts as are reasonable in the circumstances, at its option either to sell any or all of the terminated equipment at public or private cash or credit sale, or to re-let the same. In the event of such termination, lessee shall also be liable to lessor for a further sum, computed . . .: (A) As to any terminated equipment sold by lessor before the expiration of the initial term, the sum of (1) an amount equal to fifteen per cent of the actual cost to the lessor of such equipment, plus (2) the "balance of rent", being the unpaid balance (if any) of the total rent reserved herein attributable to such equipment for the portion of the initial term unexpired at the time of such termination ("unexpired term"), less (3) the net proceeds of such sale. . . . Since pursuant to the foregoing lessor may receive payment of such balance of rent at a time or times earlier or later than the same would have fallen due in the absence of termination, such balance of rent is to be adjusted by subtracting discount therefrom or adding interest thereto accordingly, at the rate of 6% per annum, and for the purposes of computing such adjustments, the aforesaid proceeds of sale or re-letting and any sums received from lessee in respect of said termination and of all costs and expenses incurred by lessor hereinbelow mentioned, and thereafter, to the payment of the balance of rent. In addition to the foregoing, lessor may recover from lessee all costs and expenses, including without limitation, reasonable attorneys' fees and fees of collection agencies, incurred by lessor in exercising any of the rights or remedies, such costs and expenses to include, without limitation, in case of termination any and all incurred in taking or receiving possession, removal, storing, selling or re-letting the terminated equipment in reconditioning the same for selling or re-letting, and in repairing and restoring the same to the conditions stated in paragraph 7 hereof
 
 
 [3]
 The three remedies are:
 "(a) he may treat the lease as terminated and resume possession of the premises, thereafter using the same exclusively as his own for his own purposes; or
 "(b) he may retake possession of the premises for the account of the tenant, holding the tenant in general damages for the difference between the rentals stipulated to be paid and what, in good faith, the landlord is able to recover from a reletting; or
 "(c) he may stand by and do nothing, and sue the lessee as each installment of rent matures, or for the whole when it becomes due." 4 Adkins, Florida Real Estate Law and Procedure Sec. 106.04 at p. 1970 (1960). See also Kanter v. Safran, Fla.1953, 68 So.2d 553, 557-558; Diehl v. Gibbs, Fla.App.1965, 173 So.2d 719, 720.
 Jimmy Hall's Morningside Inc. v. Blackburn & Peck Enterprises Inc., 235 So.2d 344 (Fla.Dist.Ct. of Appeal, 2d Dist. 1970). See also Hyman v. Cohen, 73 So.2d 393 (Fla. en banc 1954).