425 So.2d 182 (1983)
Donald J. WOLF, D/B/a Printing Plus, Appellant,
v.
Robert BUCHMAN, D/B/a Minit Print of Miami, Appellee.
No. 81-803.
District Court of Appeal of Florida, Third District.
January 18, 1983.
*183 Britton, Cohen, Kaufman, Benson and Schantz and J. Robert Olian, Miami, for appellant.
Richard A. Burt, Miami, for appellee.
Before NESBITT, DANIEL S. PEARSON and JORGENSON, JJ.
DANIEL S. PEARSON, Judge.
This is an appeal from a final judgment in favor of Buchman, the plaintiff below. The judgment awarded to Buchman the possession of a Minolta copier pursuant to a writ of replevin, damages in the sum of $3,650, and attorneys' fees.
In January 1980, Buchman and Wolf orally agreed that Buchman, beginning then, would lease a Minolta copier to Wolf for thirty-six months at a rental of $100 per month. From January to May, the copier was disabled on many occasions. Because Buchman advised Wolf that Minolta refused to service the copier because of a dispute about the amount owed by Buchman for the machine, Wolf had the copier repaired by another service company. Service was needed three or four times a month.
By June 1980, the copier was not working at all. Wolf demanded that Buchman refund the rental paid to date, a sum of $400. Buchman refused, but offered to terminate the lease upon Wolf's return of the copier. Wolf advised Buchman that he would not return the machine until he was reimbursed for the amounts expended on repairs.
In September 1980, Buchman filed a complaint for replevin, a writ issued, and Buchman took possession of the copier. In a second amended complaint, Buchman sought lost revenues under the lease of $3,200, the cost of repairing the copier *184 which, he maintained, Wolf had damaged, and attorneys' fees.[1]
Wolf concedes that although the evidence as to which of the parties was responsible for the continued malfunctioning and poor condition of the copier was in dispute, there is evidence to support the trial court's finding that Wolf was at fault. Since there is also sufficient evidence to show that the cost to repair the copier at the time it was returned to Buchman was $1,000, it follows that Buchman is at least entitled to that amount. Wolf further concedes that he was in possession of the machine for ten months before it was replevined and that, therefore, Buchman was entitled to $600 in accrued and unpaid rent. Wolf's primary complaint on appeal is that the balance of the undifferentiated judgment of $3,650 is totally without support in the record. We must agree unless Buchman, as he contends, established his entitlement to payments under the lease agreement accruing after the machine was returned to him under the writ of replevin.[2] Wolf's second point is that an award of attorneys' fees under Section 57.105, Florida Statutes (1979), was totally unjustified.
A lease, whether of real or personal property, may create or defeat the right to the value of the lease as damages even upon return of the property.[3]See Chandler Leasing Division, Pepsico Service Industries Leasing Corp. v. Florida-Vanderbilt Development Corp., 464 F.2d 267 (5th Cir.), cert. denied sub nom., Florida-Vanderbilt Development Corp. v. Chandler Leasing Division, Pepsico Service Industries Leasing Corp., 409 U.S. 1041, 93 S.Ct. 527, 34 L.Ed.2d 491 (1972). In Chandler Leasing, the parties entered into a nine-year lease of a yacht. Nine months later, the lessee ceased making payments and notified the lessor that it was terminating the lease because of an electrolysis problem. The lessor sought and obtained a judgment of replevin. Thereafter, the lessor brought suit to recover damages in accordance with the provisions of the lease, namely, all future rental payments less the price received by it at the public sale of the yacht. The lessee defended on the theory, inter alia, that the lessor's damages were limited to accrued rental payments in default. The trial court agreed with the lessee and entered summary judgment in its favor. The Fifth Circuit reversed, holding that since the lease specifically provided that the lessee remain liable for all rents upon default, the lessor's repossession of the property was no bar to an action for post-possession rents.
Construing Florida law, the Fifth Circuit rejected the lessee's argument that our decisions in Cutler Gate Building Corp. v. United States Leasing Corp., 165 So.2d 207 (Fla. 3d DCA 1964), and Monsalvatge & Co. of Miami, Inc. v. Ryder Leasing, Inc., 151 So.2d 453 (Fla. 3d DCA 1963), establish a per se rule that once the property under a lease is returned to the lessor, only the rentals in default at that time may be recovered as damages. Said the court:
"[Cutler Gate and Monsalvatge] cannot be interpreted to lay down the per se rule that irrespective of whatever contractual damage provision the parties have agreed upon, only rentals in default [can be] recovered. Such a rule would not only conflict with the right of contracting parties to obligate themselves as they wish, *185 but it would also be inconsonant with sound reason. Under so absolute a rule, lessees could breach lease agreements with impunity knowing that they would be liable only for the payments in default, and lessors on the other hand would never know when the property would be returned and in what condition. Such intolerable conditions would so seriously impair the commercial viability and efficacy of lease transactions that they would forestall or inhibit the negotiation of commercially valuable lease agreements." 464 F.2d at 270.
We agree with Chandler Leasing that no such per se rule exists and conclude, therefore, that Buchman's recovery of the copier did not ipso facto preclude him from recovering prospective rental payments under the lease. But the absence of a per se rule does not mean, conversely, that Buchman was entitled to recover these prospective rental payments.
The parties concede that the oral lease agreement here went no further than providing for the amount of monthly rent and the term of the lease. No agreement was reached, or discussion had, as to the liability of the lessee for the remainder of the rent in the event the property was returned to the lessor before the expiration of the term of the lease, or the rights or obligations of the lessor in that event. We cannot then, as did the court in Chandler Leasing, determine from the bare-bones lease agreement whether the lessor was entitled to recover prospective rental payments after recovering the property.
Where, as here, the remedy available to a lessor when his lessee breaches a lease agreement cannot be found in the lease itself, we must look to the case law for the available remedies. Chandler Leasing Division, Pepsico Service Industries Leasing Corp. v. Florida-Vanderbilt Development Corp., supra. In Stenor, Inc. v. Lester, 58 So.2d 673, 676 (Fla. 1951), the Supreme Court held that upon the breach of a lease, a lessor has three remedies available. He may:
"treat the lease as terminated and resume possession of the premises, thereafter using the same exclusively as [his] own for [his] own purposes; or
"[retake] possession of the premises for the account of the lessee, holding the lessee in general damages for the difference between the rentals stipulated to be paid and what in good faith [the lessor is] able to recover from a reletting; or "[stand by and do] nothing, and [sue] the lessee as each installment or rent mature[s], or for the whole when it [becomes] due."[4]
Holding that the lessor's conduct amounted to an election to pursue the first of the foregoing alternatives, the court went on to say:
"Consequently, having made such election it could not thereafter, like the proverbial chameleon, change color and hold the lessee liable for the difference in the amount of rental stipulated in the lease and the amount which appellee might receive upon a reletting." 58 So.2d at 676.
Where, however, it is not clear from the lessor's actions that he has elected one of the available remedies to the exclusion of another, a finding of an election will be set aside, and the cause remanded for the taking of further evidence bearing on that issue. See Kanter v. Safran, 68 So.2d 553 (Fla. 1953).
In the present case, the copier was turned over to Buchman pursuant to the writ of replevin on October 9, 1980. The case was tried nearly four months later on January 27, 1981. The only testimony of Buchman relevant to his efforts to re-lease the property was this:
"Q: Since you have had the copier returned to your possession, have you attempted to lease the copier to someone else?
"A: Yes.
"Q: And what efforts have you undertaken to find a new lessee?

*186 "A: Well, we have talked to people from the various companies that repair the machines. We have talked to people in the building. We have not advertised it in the newspaper, but probably will.
"Q: And have you been able to lease the copier?
"A: Not yet."
While, generously viewed, this testimony might be said to evince Buchman's intent to re-lease the property, there is not the slightest evidence to show that he intended to re-lease the property for the benefit of the lessee. Compare Kanter v. Safran, Inc., supra (where lessor advised lessees that if compelled to retake possession of the premises, they would relet for the account of the lessee), with Hyman v. Cohen, 73 So.2d 393 (Fla. 1954) (election by lessor to retake premises for own use found where lessor at no time advised lessee that retaking was for account of lessee). Yet the law is clear that a lessor's right to hold the lessee in general damages for the difference between the rentals to be paid and what, in good faith, the lessor is able to recover by reletting the property to another is contingent on his demonstrating an intent to relet for the benefit of the lessee. Stenor, Inc. v. Lester, supra; Kanter v. Safran, supra. While the issue of the lessor's intent is obviously one of fact for the fact-finder, Hyman v. Cohen, supra; accord, Diehl v. Gibbs, 173 So.2d 719 (Fla. 1st DCA 1965), where there is no fact to support a finding that the lessor's intent was to relet for the benefit of the lessee, the finding cannot stand.
We decide, therefore, that the evidence in the present case is susceptible of only one conclusion  that is, that the lessor treated the lease as terminated by retaking the property as his own and for his own purposes rather than for the account of the lessee. Thus, the lessor was not entitled to an award of damages for rent which was to come due after he retook possession of the property. Since except for $1,600 the amount of the trial court's judgment is either attributable to such prospective rent or nothing at all, the judgment must be reduced to $1,600, consisting of the rent due and unpaid at the time the copier was repossessed and the cost of its repair. We hold further that the award of attorneys' fees under Section 57.105 was totally unjustified.
The judgment is affirmed as modified; the order taxing attorneys' fees in the sum of $4,000 is reversed.
NOTES
[1] Wolf counterclaimed for the cost of replacing the machine. The denial of that counterclaim is not an issue on appeal.
[2] Neither party has adequately explained how the court arrived at the figure of $3,650. If that figure includes rent accruing after repossession, such rent would be for twenty-six months or $2,600, which when added to past due rent and cost of repair would make the judgment $4,200. If the $3,650 does not include such prospective rent, then it exceeds the proved damages of $1,600 by $2,050.
[3] While one employing a writ of replevin has the option of recovering the property or its value, but not both, see § 78.19, Fla. Stat. (1981); Roche v. Barbaro, 378 So.2d 1334 (Fla. 4th DCA 1980); Rood v. Miami Air Conditioning Co., 193 So.2d 216 (Fla. 3d DCA 1966), the exclusivity of one or another of these remedies has nothing whatever to do with remedies available under the lease.
[4] This rule apparently originated in Williams v. Aeroland Oil Co., 155 Fla. 114, 20 So.2d 346 (1944), although Williams is not cited in Stenor, Inc.