# Third District Court of Appeal

## State of Florida

Opinion filed November 12, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-407
Lower Tribunal No. 09-6814
_____

**N302DP, LLC,**
Appellant,

vs.

**Chardan Aero Corp, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Sarah I. Zabel, Judge.

Arnstein & Lehr and Susan E. Trench, for appellant.

Eric A. Arrington & Associates and Eric A. Arrington (Hollywood), for appellees.

Before WELLS, EMAS and LOGUE, JJ.

EMAS, J.

Appellant, N302DP, LLC ("N302DP") seeks review of a final judgment which, though entered in its favor on the issue of breach, limited its damages to $24,626.50. We hold that the trial court erred in so limiting N302DP's damages, and reverse and remand.

N302DP was formed in 2007 by R. Donahue Peebles for the purpose of purchasing a Gulfstream IIB aircraft. Peebles had agreed to purchase the aircraft after being approached by, and entering into negotiations with, Frederico Machado, who was in the business of private jet management and charters. Machado, who did not have the financial wherewithal or available credit to purchase the $3.8 million aircraft, sought to have Peebles purchase the aircraft and then lease it to Machado's company, Chardan Aero Corporation ("Chardan"), for five years, in exchange for, *inter alia*, Peebles having access to the aircraft for ten days a month.

Under the terms of the "Aircraft Lease Terms and Charter Management Agreement" ("the Agreement"), entered into between N302DP and Chardan on July 16, 2007, N302DP had the right to use the aircraft for ten days each month, and Chardan was entitled to use of the aircraft for the remainder of the month, for the purpose of operating third-party charters. Chardan was entitled to collect all revenue generated by the charter business, but was required to make monthly lease payments of $24,626.50,[1] and was responsible for all insurance, maintenance,

repair, servicing, and other associated costs of the aircraft. N302DP would be invoiced by Chardan for N302DP's own charter expenses, including jet fuel, pilot costs/expenses, and landing fees incurred for flights on its allotted days. The Agreement also provided remedies upon termination and/or default:

> **12. Remedies on Termination or Default.** In the event of a termination and/or default of this Agreement, the following remedies shall apply:
>
> (a) Within sixty (60) days, a full accounting shall be made . . .
> (b) After such settlement of accounts, [Chardan] shall turn over to [N302DP] the Aircraft, together with all aircraft log records appertaining to the Aircraft, and
> (c) In addition to 12.1(a) and (b) above, in the event of a termination due [ ] only to a default by [Chardan], then [Chardan] shall be liable to [N302DP] for the balance of the Lease Payments through the end of the Term of the Agreement.

Machado also executed a personal guaranty of the Agreement.

On September 2, 2008, Chardan invoiced N302DP for charges and expenses incurred from N302DP's client aircraft hours which occurred between July and August 2008. N302DP disputed some of the charges contained in that invoice and the record reflects the parties had multiple discussions on this issue through early

---

[1] The monthly lease payment was based upon the monthly financing charges which N302DP was obligated to pay pursuant to a loan agreement with Northern Trust Bank.

October. It is undisputed that thereafter, Chardan failed to make the next scheduled lease payment of $24,626.50, due October 10, 2008.

On October 12, Machado notified Peebles that Machado's lawyer would send a termination letter the next day due to N302DP's failure to pay the disputed invoices. Peebles advised Machado that Chardan was in default for failure to pay the October lease payment, and encouraged Machado not to proceed with declaring N302DP in default at the risk of legal action. Nevertheless, N302DP was served with a notice of default and termination letter on October 13.[2]

Thereafter, N302DP sued Chardan for breach of contract and Machado for breach of guaranty and sought, as its remedy, the accelerated balance of all lease payments as provided under the terms of the Agreement. It also alleged a claim against both Chardan and Machado for breach of fiduciary duty for allegedly abandoning the aircraft. Chardan filed a counterclaim for breach of contract and unjust enrichment, alleging that N302DP had failed to pay properly-invoiced charges. After a two-day bench trial, the trial court entered a final judgment finding in favor of N302DP on its breach of contract claim against Chardan, denying N302DP's breach of fiduciary duty claims, and denying Chardan's counterclaim. Specifically, the court found that Chardan defaulted by failing to make the October 10 lease payment. This finding, combined with the trial court's denial of the

---

[2] Machado testified at trial that at this point, he was "waiting for [N302DP] to default" so he could "end the relationship."

counterclaim,[3] left Chardan as the only party in default. Nevertheless, the trial court awarded N302DP damages in the amount of the single October 2008 lease payment ($24,626.50), noting that since N302DP took possession of the plane by October 16, 2008, and thereafter had the use and enjoyment of the plane, N302DP was not entitled to any portion of the balance of the accelerated lease payments.

This appeal followed. N302DP contends that the trial court erred in finding it was not entitled to the balance of the accelerated lease payments through the end of the Agreement (50 months), asserting its entitlement to same because the Agreement specifically provided for that remedy in the event of a default only by Chardan. We agree.

The Agreement unambiguously provides that in the event of a termination due only to a default by Chardan, it "shall be liable to [N302DP] for the balance of the Lease Payments through the end of the Term of the Agreement." There is competent substantial evidence in the record to support the trial court's finding that Chardan defaulted on the Agreement by failing to pay the October lease payment. Given this determination, and the trial court's denial of Chardan's counterclaim (which was premised upon allegations that N302DP had breached and defaulted on the Agreement), Chardan was determined below to be the only party in default. Because the termination of the Agreement was "due only to a default by" Chardan,

_____

[3] Chardan did not cross-appeal the trial court's adverse determination of its counterclaim.

N302DP was entitled, under the plain terms of the Agreement, to recover from Chardan "the balance of the Lease Payments through the end of the Term of the Agreement."  See Wolf v. Buchman, 425 So. 2d 182, 184 (Fla. 3d DCA 1983) (holding "[a] lease, whether of real or personal property, may create or defeat the right to the value of the lease as damages even upon return of the property"); Chandler Leasing Div. v. Florida-Vanderbilt Dev. Corp., 464 F. 2d 267, 271 (5th Cir. 1972) (holding that although there are multiple remedies available to a lessor upon breach by the lessee under Florida law, including retaking possession of the premises, those remedies are "intended to supply remedies when none are provided in the lease.")

Accordingly, we hold that it was error for the trial court to limit N302DP's damages to an amount representing the single lease payment of $24,626.50, and reverse and remand for entry of a judgment in an amount of damages that includes "the balance of the Lease Payments through the end of the Term of the Agreement", and for proceedings consistent with this opinion.

REVERSED AND REMANDED.